# CHARLESTON

## WILLIAMS v. VIRGINIA-POCAHONTAS COAL CO.

Submitted February 20, 1906.    Decided May 1, 1906.

1.  FORCEABLE ENTRY AND DETAINER—*Questions for Jury—Contract of Sale—Performance—Deficiency in Quantity— Waiver.*

    L. by contract in writing agreed to sell and convey to B. "or whomsoever he might designate" his land on which he then resided containing 250 acres more or less at the price of $25 per acre, the purchaser to have the right to survey the land.  B. turned the contract over to V.-P. Coal Co. which caused the land to be surveyed and by actual survey the same was found to contain 208.03 acres, one line was run "N. 49 45 W, 931 feet to a stake at or near 2 spruce pines on the foot of the hill corner to the small mill tract with the lines of the same," &c.  L. afterwards ascertained that the call for the mill tract was a mistake, that the 2 spruce pines marked as corner was over 500 feet short of the corner of the Mill tract, which excluded 1.54 acres of land intended to be sold to B. V.-P. Coal Co. caused a deed to be prepared and presented to L. to be executed to itself for the 208.03 acres, when L. informed the Coal Co. of the mistake and that the deed did not include all his land by the description it contained; the vendee elected to accept the deed as written which was executed and delivered, and it paid for the 208.03 acres only, but took possession of the whole tract.  L. afterwards conveyed to W. the 1.54 acres; W. brought his action of unlawful entry and detainer for the 1.54 acres. Whether the vendee had notice prior to the execution of the deed that the description contained in the deed made by actual survey and marked on the ground, excluded the 1.54 acres and that it accepted such deed with notice of that fact, was a question for the determination of the jury.  (p. 240, 246.)

2.  ESTOPPEL—*Contract for Sale of Land—Deficiency in Quantity— Waiver.*

    Where a tract of land has been sold by written contract at a stipulated price per acre, the survey thereof to be made by the purchaser, and the surveyor of the purchaser and the vendor by mistake and by actual survey so run the lines that a part of the tract so sold is excluded from the description contained in the deed and before deed is executed the vendor discovers the mistake and notifies the vendee thereof and the vendee elects to and does accept such deed excluding a part of the tract and pays for the quantity described in the deed according to the courses and distances, as marked on the ground by the surveyor and set in the deed, the vendee will be estopped from claiming that part so excluded.  (p. 248.)

(SANDERS, JUDGE, absent being Judge in court below.)

Error to Circuit Court, McDowell County.

Action by the Virginia-Pocahontas Coal Company against B. F. Williams.    There was judgment for defendants, and plaintiff brings error.

*Affirmed.*

GEO. E. PRICE and RUCKER, ANDERSON & HUGHES, for plaintiff in error.

STROTHER, TAYLOR & STROTHER, for defendant in error.

MCWHORTER, PRESIDENT:

A. D. Beavers and wife owned a tract of 255 acres of land on Clear Fork of Tug River in McDowell county. On the 26th day of March, 1877, they conveyed by deed to Martha J.Barnett the western end of said tract containing 5 acres upon which Barnett built a mill, after which the tract so conveyed was known as the "Barnett Mill Tract." On the 20th of August, 1896, by deed of that date Beavers and his wife conveyed the remainder of said tract of 255 acres to T. A. Lambert. On the 29th of November. 1901, T. A. Lambert, by contract in writing, agreed to sell the said residue of the tract and to convey the same with covenants of general warranty "to William J. Brown or whomsoever he may designate." In said agreement it was provided: "The titles to the property are to be passed on by the attorney of the purchasers by Feby. 1, 1902, and said purchasers are to have the right to survey the land, which survey is to be completed six months from Jany. 1st, 1902, and I am to have the right to have a representative with the surveyor.

The said Wm. J. Brown or the purchasers to be designated. by him shall have the privilege at any time to anticipate the deferred payments." The said agreement described the land as " containing 250 acres more or less at the price of $25 per acre and an additional sum of five hundred dollars for the improvements," then provides for the terms of payment.

Under this contract the Virginia-Pocahontas Coal Company, being the party to whom said Brown directed the land to be conveyed, caused the same to be surveyed and upon such survey the tract was found to contain 208.03 acres. The attorney for the Virginia-Pocahontas Coal Company took the description made by the surveyor and prepared a

deed to be executed by the said Lambert, which deed was
dated the 1st day of October, 1902, and was duly acknowl-
edged by Lambert and his wife on the 13th day of Decem-
ber, 1902. The description contained in this deed did not
include the whole of the land agreed by Lambert to be sold
to Brown, by mistake or otherwise in making the survey
there was a small piece containing 1.54 acres not included
within said survey. On the 17th day of April 1903, T. A.
Lambert and Evaline his wife conveyed by deed of that
date in consideration of $3,000 the said 1.54 acres to B. F.
Williams. After conveyance to the Virginia-Pocahontas
Coal Company the vendee entered into possession of the said
land including the 1.54 acres, which included part was entered
upon by Richard Collins, the tenant of the Virginia-Pocahon-
tas Coal Company.

On the 10th day of August, 1903, the said B. F. Williams
sued out of the circuit court of McDowell county his sum-
mons in unlawful entry and detainer against the Virginia-
Pocahontas Coal Company and Richard Collins to recover
the possession of said tract of 1.54 acres of land. On the
17th day of September, 1903, "on motion of the plaintiff by
counsel the summons or declaration and notice in this case
is docketed," and upon motion of the plaintiff an order of
survey was made requiring W. T. Tabor the surveyor of
McDowell county, to go upon the land in controversy and
do such surveying as might be desired by any of the parties
to the action and make report to the next term of court,
giving the parties ten days notice of the time when he would
execute the order. On the 28th of December, 1903, the
defendants appeared and entered their plea of not guilty
and a jury was impanneled to try the issue. After the
plaintiff had introduced all his evidence in chief and rested
his case the defendants moved to strike out the evidence and
direct the jury to return a verdict in favor of the defendants,
of which motion the court took time until a future day of the
term to consider. On the 31st day of December the court
overruled the motion to strike out the evidence and to direct
a verdict for the defendants and the jury having heard all
the evidence and the argument of counsel found for the
plaintiff the possession of the land in controversy and $500
damages for the detention thereof. The defendants moved

to set aside the verdict and grant them a new trial on the ground that the same was contrary to the law and the evidence, and moved in arrest of judgment, of which motion the court took time to consider. On the 8th of June, 1904, on the hearing of the motion to set aside the verdict and grant a new trial the plaintiff announced in open court that he waived the damages awarded him by the said verdict and the court overruled the motion to set aside the verdict and grant a new trial and rendered judgment upon the said verdict for the possession of the property and the plaintiff's costs of the action.

In the course of the trial the defendants took three several bills of exceptions numbered 1, 2, and 3 respectively, which were signed, sealed and made a part of the record in the case. The defendants obtained from one of the judges of this Court a writ of error and *supersedeas.* The first bill of exceptions certifies and contains all the evidence adduced in the case of both parties. It is conceded that the purpose and intention of the contract of sale made by Lambert to William J. Brown was to sell and convey all the land then owned in said tract by T. A. Lambert and which was then occupied by said Lambert, but in running the lines of the survey by S. M. Taylor, the surveyor of the defendant, the line "N 49 45 W 931 feet to a stake at or near two spruce pines on the foot of the hill corner of the mill tract" stopped short of the corner of the mill tract by several hundred feet. It is contended by defendants that the corner of the mill tract being called for governs and should be made the point called for notwithstanding the corner marked and designated by the surveyor, in other words it controls rather than the courses and distance. It is true Lambert was with the surveyor and said that he thought that they had gone far enough to reach the corner of the mill tract. Lambert testifies that before the execution of the deed which was presented to him by the defendant's attorney to be executed he gave him notice and also told Mr. Taylor the surveyor that the description made by the surveyor and contained in the deed did not include all the land; that he notified them that the 1.54 acres of land was omitted from their survey and was not contained in the deed and states that Taylor, the defendant's surveyor, "made a plat, or what-

ever you may call it of this 1.53 or whatever it is, fifty six one hundredths, he made a plat of it with the Barnett tract, including it all as the Barnett tract. Including the acre and fifty-six hundredths, or whatever it may be, he included that in the Barnett tract, making the Barnett tract six acres and some one-hundredths." And on cross-examination was asked: "Q. 4. You have further stated that this tract of land is not included in the deed made by you to the Virginia-Pocahontas Coal Company, which deed was made by you in pursuance of this contract between you and Mr. Brown. Now, I will ask you to please explain to the jury why it was that this tract of land included in the land which you contracted to sell to Mr. Brown, and was not included in the deed made pursuant to that contract? A. Do you want me to explain it? Q. 5. Yes sir? A. Well I entered into a contract with Mr. William J. Brown to sell him my land on Clear Fork, on which I now reside, I believe the contract says, containing 250 acres more or less, and the title was to be passed on by the first day of January after the contract. We entered into the contract about the last of November some time. And the survey shall be completed by the party of the second part within six months from the date of the contract. The party of the second part went on this land and surveyed it, and prepared a deed for me to sign and acknowledge, but before I signed the deed or acknowledged it, I notified them that this land had been excluded from the deed, and that it hadn't all been run out. They said they would look after that, or something. But it was some time, I believe it was eleven months after the contract was made until I made them this deed. They brought me a deed and I signed and acknowledged it and I considered that that other land was mine. It wasn't included in the deed. They failed to run out all the land I had that was included in that contract, and the contract had expired some four or five months. That is why it wasn't included, and they never offered to run it out and never tried to ascertain whether it was in it or not. Q. 6. You have stated that you were present when at least a part of the survey of your land was made by Mr. Taylor. State whether you were present when Mr. Taylor ran what you have referred to as the West line of your land and the line which

falls short of the Mill Tract? A. I don't think I understand the question (Stenographer read question). Yes sir, I was present. Q. 7. Were you present when Mr. Taylor established the extreme western limit of that land—the line farthest down Clear Fork? A. Yes sir I was present. Q. 8. Please state if you know, how Mr. Taylor happened to stop there and fix that as the extremity of your land? A. Well sir, at the time we was running down there I told him when we got down there that we was at the upper end of the Barnett tract. There was five acres sold off of the lower end of my land down there at one time, and I supposed that it contained five acres. I had never saw the papers, and didn't know where this line was. I told him I didn't want to sell anything that didn't belong to me, but I says if there is anything more than five acres down here it belongs to me, and we run across there. And then Mr. Taylor run out this Barnett tract, and when he platted it, it had six acres and something in it, and I told him that there wasn't but five acres in the Barnett tract. But after that I came over here and looked at the records, and found that I run down on that side of the creek. Q. 9. And you further told him that that was the corner of the Barnett tract? A. I didn't know whether it was the corner of the Barnett tract or not. I told him that was where the Barnett tract set in, and I didn't want to sell anything that didn't belong to me, and that in case it was that way, we had better stop there. Afterwards I found that my line extended on that side of the Creek, but not on the other side. I told him if there was anything more than five acres of it, it belonged to me, and after he platted it out he made it six and and fifty-three hundredths. I think and then I came and examined the records and found that the Barnett tract didn't make that much, and then I notified the Company that that land was mine, and that Mr. Taylor hadn't included it in his survey. Q. 10. Do you know whether or not Mr. Taylor ever surveyed your land more than once? A. No sir, if he ever surveyed it more than once I don't know it. I have no recollection of it. Q. 11. The deed which you executed to the Virginia-Pocahontas Coal Company, filed in this case calls for this line as running to the small Mill tract, and with the lines of the same. Please state to the jury how you claim

under that deed that this land which lies between where Mr. Taylor stopped on that line and the Barnet Mill tract—why it is not included in this deed?   A.   Well sir, it dont go down —that is, because it don't go down to the lower end of my survey.   The Creek runs right down through it, and the Barnett tract on the upper end is on one side of the creek and mine is on the other.   The Barnett tract don't cross the creek, and we stopped up opposite the Barnett tract, thinking that it took the opposite side of the creek, but when I found out better, I notified the Company or Mr. Hurt, and Mr. Taylor, that I had some more land there.''

The testimony of Lambert concerning his notifying, before the execution of the deed, the attorney and agent, Mr. Hurt, and Mr. Taylor, the surveyor, of the defendant of the fact that the deed as presented to him did not include the 1.54 acres in controversy, is not unequivocally denied by the parties notified in their testimony; and Aaron Collier, a witness for the defendant and to whom Lambert surrendered possession of the property after the company purchased, on cross-examination admits that he told Hurt that Mr. Taylor told him there was a discrepancy in the land and he told Taylor to see Hurt and tell him there was a discrepancy in the deed and that Taylor thought it might some day give trouble, that it had better be arranged and that this was before Lambert executed the deed, strongly tending to corroborate Lambert that he had called attention to the fact that the deed did not include the land in controversy.   It appears and seems to be conceded that the land at the time of the sale was worth about $25 per acre, so that in reply to the statement of counsel that Lambert never would have thought of claiming that he had not sold the land in controversy to defendant '' had not the value of the land in controversy mounted from twenty-five dollars per acre to two thousand dollars per acre in the brief period from October to April. That placed enough at stake to justify Lambert in taking long chances on a law suit against his vendee'' it might with equal propriety be said on the other hand that the land being of such trifling value at $25 per acre, when defendant was notified that 1½ acres were excluded from the deed, it was not considered of sufficient importance to take up the matter and correct it before its execution and defendant was satis-

fied to accept the deed as prepared by its attorney and allowed it to be so executed excluding the small quantity in controversy. This was a purchase by the acre, the surveying was done by the vendee and by its own survey it included 208.03 acres only, and paid for that number of acres only. It is contended by defendant that the call for the corner of the Mill tract controls and not the course and distance as laid down in the survey, and cite *Fulwood* v. *Graham*, 1 Rich S. C. 491, where it is said: "All the cases maintain that in locating land we are to resort first, to local boundaries; second, to artificial marks; third, to adjacent boundaries; fourth, to courses and distances." And citing *Western and Mining Manufacturing Co.* v. *Cannel Coal Co.*, 8 W. Va. 406, where the same order of precedence in locating boundary lines was adopted. Ordinarily this may be the correct order of precedence where there are no controlling circumstances and the face of the deed only is to be consulted. Counsel for defendants contend that the construction of a deed is a question of law for the court and cite 4 Am. & E. E. L. 809, where it is said: "The meaning of a deed, that is, what it covers, is a question of law for the court; what the boundaries of a given piece are is a question for the court also; where they are is a question of fact for the jury." As above stated it is true the construction of the deed taken alone is for the court, but where the survey has been made upon the ground as in the present case, and a line and corner fixed by the surveyor and parties and a mistake has been made in the location of such line or corner as called for in the survey and it has become a question of fact as to whether the vendee was notified of the mistake, and whether, being so notified, he elected to adopt the description made by the surveyor and caused the deed to be prepared and executed in accordance with such mistaken call, these are questions of fact for the jury.

In *Johnson* v. *Archibald*, 78 Tex. 96, 22 Am. St. 27, it is held: "The survey is actually made may always be shown by any legal evidence, when in fact the lines were run upon the ground." And "Whenever the evidence is sufficient to induce the belief that the mistake in a survey is in the call for a natural or artificial object, and not in the call for course and distance, the latter will prevail, and the former will be disregarded." And further: "The declaration of

the surveyor who made the survey is competent evidence to show that the mistake therein is in the call for a natural object, and not in the call for course and distances." And in *Tennant* v. *Hamilton*, 3 Har. & J. (Md.) 233, it is held: "To prove the location and survey of a tract of land calling to begin at the end of one of the lines of another tract, and to run to and intersect other tracts, &c. and that it began at and run to particular places described on the plots, parol evidence of the surveyor, who originally located and surveyed the tract of land, was admitted as legal and competent.

If certain tracts of land called for by a junior survey were surveyed by course and distance when the junior survey was made, then the grant on such junior survey passed no other land than was included by such survey." In 4 Am. & E. E. L. 786, it is said: "Courses and distances control incidental calls for monuments, except where there is a clear intention shown to make such calls locative; and they also control indefinite and conflicting calls for monuments. They govern where surrounding circumstances show them to be more reliable, or where such is the intention of the parties, or where monuments are called for by conjecture and not by actually running out the lines upon the ground according to rule. Sometimes a fixed and visible monument is controlled by course and distance." And authorities there cited. And further at page 787 *Id.:* "Calls for supposed lines or for lines and corners of adjoining surveys which were not in fact established at the date of the deed which calls for them, or at the time that the adjoining or prior survey was made, are controlled by the courses and distances given in the deed." In *Bragg* v. *Lockhart*, 11 Tex. 159, it is held: "Where lands are partitioned and the lines are actually run and marked on the ground, the courses and distances corresponding with the marked lines, will control a call for the corner of another survey, particularly where the corner of such other survey is not well established and marked on the ground; and subsequent purchasers will be bound by the actual survey, particularly where the lines are again run out, at such subsequent purchase."

There is no question in case at bar that a mistake was made in fixing the corner at the two spruce pines and calling

for the corner of the mill tract which corner was unknown at the time, and the actual survey made failed to reach the ·corner mentioned. It was not known at the time by the parties where that corner was. It·was a question of fact to be decided by the jury whether the parties intended at the time the deed from Lambert was executed to include all the land contracted to be sold by Lambert to Brown. It was obviously the intention, indeed it is conceded that at the time the survey was made it was the intention to include all of said land, but having failed in the survey made upon the ground as marked out by the surveyor to include it all if the contention of the plaintiff is correct, that the defendant was notified before the execution of the deed that the description contained in the deed did not include all the land contracted to be sold to Brown or his assignees and as it is shown by actual ‘survey made by the defendant that the tract as described by him contained only 208.03 acres and it was a purchase by the acre, and defendant company paid for the exact quantity set out in the survey and deed, the defendant must be held to have adopted the actual survey of the tract as made on the ground and shown in the deed as the quantity of land it intended to purchase and have conveyed to it by said deed. This is really the only question involved in the case, the contract of sale is merged in the deed. It was clearly a sale by the acre and if the defendant had notice before the deed was executed that it did not contain all the land contracted to be purchased it elected to accept the *survey* as made upon the ground, the discrepancy between the contract and the deed being called to its attention. It elected to accept the conveyance of 208.03 acres as set out in the description made by itself and as to the fact whether it so elected to accept the description made by itself after the mistake was brought to its attention, or whether in fact it was brought to its attention before the execution of the deed, was purely a question for the jury. Witness Lambert is positive in his testimony as to notice to defendant before the execution of the deed which was accepted by defendant with full knowledge that it did not contain the land in controversy, and the jury found that the deed was so accepted notwithstanding the exclusion of the 1.54 acres in controversy.

The first assignment of error is in permitting the deed from Lambert and wife to Williams, dated April 17, 1903, to be read to the jury. This is the title paper under which the plaintiff claims, he had the right to show by this deed what he claimed and the boundaries of his land; defendant by their counsel do not attempt to give any reasons for excluding this deed and we see no reason why it should not go to the jury. It is claimed that the court erred in permitting T. A. Lambert to testify that the 1.54 acres were not included in the deed to the defendant company and to testify that he notified the defendant company of that fact before it entered into possession under its deed. The contention of the plaintiff in the case was that the corner marked by the surveyor as two spruce pines corner to the Mill tract was not in fact the corner of the Mill tract and that the line running to that corner stopped several hundred feet short of the corner of the Mill tract, leaving the land here in controversy excluded from the survey then made, of which vendee had notice, and the testimony only amounted to this, if the court construed the deed to properly locate the corner at the Spruce Pines and not at the true corner of the Mill tract then the 1.54 acres were not included in the deed.

It is also claimed that the court erred in overruling defendant's objection to the question in chief propounded to Lambert in which he was asked whether the Virginia-Pocahontas Coal Company had paid him for the 1.54 acres, his answer being "No sir." Because it is claimed that the same is wholly immaterial, the question involved being whether or not that land was conveyed in the deed. The question was perhaps immaterial but I am unable to see in what manner it could prejudice the case of defendant, it was a certainty that it had not been paid for under the deed. The sale was by the acre and the deed called for a fixed amount 208.03 acres. Mr. Hurt, the agent, attorney and witness of defendant, was asked by the defendant why the company had not paid for the land in controversy and he answered, "Because he wouldn't accept it." This was objected to by plaintiff and objection sustained after the answer was made. It would seem that the ruling of the court was more favorable to the defendant than to the plaintiff, that the answer of the witness tended to prove the reason the plaintiff had for not

accepting the pay for the 1.54 acres, as he was claiming that he had not sold it to defendant, and why counsel for plaintiff should object to the question or answer cannot well be conceived.

It is contended that the court erred in allowing the map and report of W. T. Tabor, surveyor, to be introduced in evidence to the jury. This map and report were made in response to the order of survey made in the case showing the lines and boundaries of the land in question. This is an official report made by a surveyor of the court after giving due notice to the parties as required by the order of survey, no exception was taken to said report, the introduction of it in evidence was simply objected to by the defendant and such objection was overruled by the court. No exceptions being taken to the report the court did not err in overruling the objection to its introduction as evidence.

Defendants say that the court erred in permitting witness Tabor, surveyor who made the report, to testify that the land in controversy was not included in the deed to defendant company. This witness had, under the order of the court in this case, surveyed the land here in controversy and knew where the corner was made by the defendant's surveyor at the two spruce pines and knew that according to the lines and corners of that survey marked on the ground it was impossible that the 1.54 acres here in controversy could be included in the tract of 208.03 acres conveyed by Lambert to defendant company, and it is not disputed that if the two spruce pines called for by the deed is the true corner and not the corner of the Mill tract that the deed for 208.03 acres does not contain the land here in controversy.

It is said the court erred in refusing to strike out the evidence of plaintiff on defendant's motion. When the plaintiff had introduced all his evidence in chief defendant moved to exclude the plaintiff's evidence from consideration of the jury and instruct the jury to find a verdict in favor of the defendant, which motion was overruled. In the trial of a case when the evidence of the plaintiff is sufficient to sustain a verdict, if rendered for the plaintiff, the court will not sustain a motion to exclude the plaintiff's evidence from the jury.

It is further contended that the court erred in not permitting defendant's witness Hurt, who was the agent and attor-

ney of defendant company, "to answer the question in chief as to whether the Virginia-Pocahontas Coal Company was ready and willing to pay for the land in controversy in this case according to the terms of the contract between Lambert and Brown." If it was true that the defendant company had accepted the deed with notice of the fact that the description contained in the deed did not include the land in controversy, the answer was immaterial, the minds of the contracting parties had changed and by so accepting the deed as executed with notice of the change in the survey the intention of the parties was to exclude the 1.54 acres and it had become immaterial whether the defendant was ready and willing to pay for the 1.54 acres or not.

The defendant says that the court erred in refusing to give instructions Nos. 1 and 2 asked for by the defendant. These instructions asked the court to tell the jury that the land described in the deed from Lambert to the Virginia-Pocahontas Coal Company extends to and runs with the lines of the Barnett mill tract, and if the jury believe from the evidence that the land in controversy was a part of said tract of land then they must find for the defendant. This, of course, asks the court to construe the deed in accordance with the theory of the defendant, but the facts have been shown that the actual survey made by the defendant upon the ground failed by mistake to reach the Mill tract and the surveyor and the vendor Lambert who was with him supposing they had reached the Mill tract marked a corner which lacked more than five hundred feet of extending to the Mill tract. The agent and attorney of the defendant prepared the deed and presented it to Lambert to be executed some time after the surveying was done, and in the meantime Lambert had discovered the mistake that had been made and informed the defendant that the description as contained in the deed did not include all the land that he owned there and had agreed in his contract with Brown to sell. The defendant chose to accept the deed excluding a small portion of the land and which is that in controversy here, only paying for that which it got under the deed fixing the corner at the two spruce pines so fixed by its surveyor and Lambert, and having so accepted the deed with notice of the mistake it is estopped from claiming lands which are not included within the

boundary marked upon the ground by its surveyor. If there were no circumstances throwing doubt upon the intention of the parties showing that a mistake had been made and that both parties had become cognizant of the fact of such mistake before the execution of the deed, it would have been proper for the court to give said instructions; but where a question of fact comes so prominently to the front raising the question of the mistake and the subsequent action of the parties with the knowledge thereof, the court would not be warranted in construing the deed according to the theory of either party but the question of fact must be left open for the jury. To make the instructions good there should have been added to them something to this effect: "Unless the jury further believe from the evidence that a mistake was made in fixing the corner of the tract so conveyed by Lambert to the defendant at the two spruce pines instead of the corner of the Barnett Mill tract, as called for, thereby excluding the 1.54 acres here in controversy, of which mistake the defendant was notified prior to the execution and delivery of the deed to it, and that it accepted the deed notwithstanding it did not include the land in controversy." Without such modification the court did not err in refusing the instructions.

For the reasons herein given the court did not err in refusing to set aside the verdict of the jury and grant the defendants a new trial, and the judgment of the court must be affirmed.

*Affirmed.*