# CHARLESTON.

WILLIAM JAMES SONS CO. v. HUTCHINSON *et al.*

Submitted October 31, 1916.   Decided December 12, 1916.

1. APPEAL AND ERROR—*Review—Harmless Error—Notice of Equitable Defenses.*

   Where no substantial prejudice to plaintiff appears, and he does not avail himself of the leave granted to take a continuance, the action of the court in permitting the filing of a notice of equitable defenses, under §22, ch. 90, Code, during the progress of a trial in ejectment, will not constitute reversible error. (p. 391).

2. SAME—*Record—Conclusiveness.*

   The literal correctness of a record transcript in an appellate court is to be assumed, in the absence of evidence of its inaccuracy.   (p. 394).

3. VENDOR AND PURCHASER—*Construction of Contract—Punctuation.*

   No legal warrant exists to change a meaning apparently clear to another materially different and inconsistent, by transposing a comma adopted by the parties to a contract for the sale of real estate, for aught that otherwise appears, to render clear payment of the consideration for the purchase.   (p. 394).

4. EVIDENCE—*Weight and Sufficiency—Conclusiveness on Party Introducing.*

   A party is bound by his own evidence, and, when not contradicted, he is not permitted to question its credibility, unless he is

apparently surprised by his own witness, or introduces it as the foundation of further evidence or to contradict or impeach a witness called to testify by his adversary.    (p. 394).

5. ADVERSE POSSESSION—*Hostile Character of Possession—Possession by Purchaser.*

The possession of land by a purchaser under an executory contract of sale becomes adverse to his vendor only upon the severance of the relation of privity between them by disavowal of a holding in subordination to the title of the vendor, coupled with notice to him of such disclaimer.    (p. 401).

6. APPEAL AND ERROR—*Review—Estoppel to Allege Error.*

Error invited precludes complaint on appeal by the party provoking the erroneous ruling.    (p. 404).

7. DEEDS—*Construction—Merger of Previous Agreements.*

The presumption of law is that the acceptance of a deed, made in pursuance of an antecedent written agreement for the sale of land, is satisfaction of all previous covenants, and, although such acceptance may in some circumstances be but partial execution of the contract, to rebut the legal presumption the intention to the contrary must be clear and convincing.    (p. 397).

8. SAME—*Vendor and Purchaser—Modification of Contract—Acceptance.*

Until consummated by deed, an executory contract of sale is subject to modification by agreement of the parties; and where an act is done which without fraud or mistake is tendered by one of them, and accepted as full performance by the other with knowledge of his legal rights and equities, the acceptor and those claiming under him are not competent to assert that some part of the original agreement remains to be performed.    (p. 397).

9. SAME—*Performance of Contract—Acceptance.*

Where, in contemplation of a contract of purchase later secured, the purchaser, by a survey made by himself, a competent surveyor, ascertains the actual contents of the tract purchased, on which he then and during many years thereafter resided, the metes and bounds of which are set out in the contract, and with full knowledge of his rights and equities accepts without protest or objection a deed made in pursuance of the contract, though for a less quantity, also ascertained by a survey of which he then was aware, no covin or misrepresentation appearing, the deed, merging as it does all prior negotiations, including the contract of sale, estops him and those claiming under him, after the lapse of a reasonable time, to assert a claim to the residual quantity, title thereto in the meantime having passed by various mesne conveyances to a remote grantee of the original owner.    (p. 397).

10. TAXATION—*Forfeiture—Defenses.*

On each of two or more claimants of the same land under adverse titles or color of title devolves the duty to enter the land for taxation in his own name and regularly pay the taxes thereon assessed, if he desires to prevent forfeiture to the state. Entry and payment by one such claimant does not operate to prevent the forfeiture of the title of another not in privity with him. (p. 405).

11. PUBLIC LANDS—*Sale of Forfeited Lands—Conclusiveness—Parties Concluded.*

A suit brought by the state under chapter 105, Code, is a judicial proceeding, and confers jurisdiction to determine finally all matters affecting title to the lands charged to be forfeited; and an adjudication of such matters binds all parties to the record and their privies, and neither can collaterally attack it. (p. 406).

Error to Circuit Court, Raleigh County.

Action by the William James Sons Company against L. H. Hutchinson and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*A. A. Lilly, John Q. Hutchinson* and *Dillan & Nuckolls,* for plaintiffs in error.

*McCreery & Patterson* and *T. N. Read,* for defendant in error.

LYNCH, JUDGE:

By a former decision, reported in 73 W. Va. 488, a judgment in ejectment was reversed, because plaintiff failed to deraign title from the original or from a common source and secured the admission of incompetent testimony. During the progress of the retrial, on the plea of not guilty, re-entered, defendants gave notice that they would rely upon equitable defenses under §20, ch. 90, Code. At the conclusion of the evidence, the court on motion directed a verdict, and thereon again entered judgment for plaintiff. Upon the present writ, the propriety of this ruling comprehends the various assignments of error urged for reversal.

Upon the second trial, the parties agreed that the Grangers were the common source of their titles. By testimony not

contradicted, plaintiff proved that from 1871 to 1887 Alfred Beckley was the duly authorized agent to sell the lands of the Grangers in Raleigh county; and that, as such agent, by written contract of June 2, 1873, never recorded, he sold to James A. Hutchinson the 340 acres in controversy, describing it by metes and bounds. This tract is referred to in the record indifferently as 339, 340 and 389 acres. It was part of a 12,625 acre tract owned by the Grangers. A deed therefor, made in 1877 in consummation of the contract, although by them transmitted to Beckley and by him to Azel Ford in 1887, who in that year succeeded Beckley as such agent, never was delivered to Hutchinson.

January 5, 1888, the Grangers themselves conveyed to Bond Brothers & Company the 12,625 acres, "exclusive of all prior sales and grants". In the same month Ford took from the Grangers a quit claim deed covering the same boundary. For some reason not definitely disclosed, although plaintiff says it was to cure some defects in prior conveyances, Ford individually granted to Bond Brothers the same tract December 30, 1889, but expressly "excepted" therefrom the "340 acre contract claimed by James A. Hutchinson." These deeds promptly were admitted to record in Raleigh county. They resulted to vest in Bond Brothers the large acreage, with the exception of the Hutchinson parcel, the status of the title to which is the vital issue involved in this action.

Ford and wife by deed of March 29, 1890, granted to James A. Hutchinson 141 acres out of the 340 acre tract. The coal and other minerals under it Hutchinson reconveyed to Ford May 12, 1894, and he on the same day to the Jameses together with the entire 340 acres, but expressly "excepting from the same the surface of the 141 acres which was heretofore conveyed to James A. Hutchinson", designating the exclusion by metes and bounds. The lands and minerals so granted to them the Jameses conveyed to the plaintiff company by deed of December 24, 1894, containing the same exception. What consideration or motive induced the omission of the residue of the 340 acres from the deed by Ford to Hutchinson does not appear. For its absence, however,

plaintiff undertook to account by introducing in evidence a contract purporting to be a lease by Ford to Hutchinson, dated April 28, 1890, for such residue. The ultimate object of its introduction apparently was to furnish a basis for the inference or conclusion that by accepting the lease Hutchinson recognized the superiority of Ford's title to the residual quantity.

Plaintiff on the second trial introduced in evidence the Beckley contract, apparently as a link in its chain of title, . whereupon defendants gave notice of an intention to rely upon equitable defenses, permitted by chapter 90 of the Code. They relied upon the paper as an element of their defense, on the theory that, as Ford and his grantees took the legal title with full knowledge of the equitable rights conferred by the contract, they held the title, not as bona fide purchasers, but in trust for the benefit of Hutchinson.

The reason assigned to excuse the delay in giving such notice is. that the James brothers, plaintiff's grantors, had in 1904, in the proceeding of the State against Jarrell and others to sell as forfeited part of the land in controversy, set up in themselves title by virtue of Ford's deed, and claimed the Beckley contract to be a forgery; and hence defendants were taken by surprise in consequence of the change of position when plaintiff introduced that contract in evidence in support of its right to the recovery sought in this action. The statutory requirement is that defendant shall not be allowed on a trial in ejectment to avail himself of any equities possessed by him ''unless notice in writing of such defense shall be filed with his plea''. Clearly, the notice so prescribed is a prerequisite to the exercise of that right. The statute does not expressly specify the stage of the action at which the notice shall formally be given; nor does it purport to deprive the court of the generally recognized discretion to permit the entry of an additional plea after the usual time for filing it has passed. But no prejudice to plaintiff is observed, and none is urged. Each party had equal knowledge of the Beckley contract. Plaintiff introduced it in evidence as a partial basis of recovery; and, as appears from the order filing the notice, plaintiff was accorded the right to a continuance of

the case if desired, but none was asked for. In these circumstances, the argument advanced in derogation of the permission to prove such equities seems to lack substantial merit.

That the contract, if genuine, is, within the intent and meaning of the statute, "a writing stating the purchase and the terms thereof", is denied also on the ground of alleged indefiniteness as to the actual consideration. Whether such obscurity exists is to be determined from the language and punctuation of the clause, "in consideration of the sum of $150, paid in surveying and other valuable consideration, by James A. Hutchinson to him the said Alfred Beckley". Such is the appearance of the paper as printed in the record. Plaintiff would shift the comma after the figures so as to place it after "surveying", and argue that the contract does not state of what the "other valuable consideration" consisted or that it had been paid, and thus fails to show a material term of the sale. In the absence of evidence of its inaccuracy, the literal correctness of the transcript is to be assumed. There is no warrant in law for changing a meaning apparently clear by substituting a punctuation different from that employed by the parties themselves, for aught that appears, in an endeavor thus to place beyond doubt the matter of full payment of the agreed consideration.

If the genuineness and validity of the Beckley contract be conceded, it necessarily follows that Ford was not a bona fide purchaser, in view of our recording acts. 13 Enc. Dig. 595. Of that agreement, and any rights of James A. Hutchinson existing thereunder, he had ample notice. Actual knowledge thereof Ford does not deny. He knew the 340 acres was within the 12,625 acres conveyed by the Granger deed to the Bonds, as it excepted "all prior sales", as did also his deed to the same grantees made after he had procured the quit claim deed from the Grangers. The last deed definitely excepted the Hutchinson sale, describing it as the "340 acre contract claimed by James A. Hutchinson". Prior to the conveyance to the Bonds, the inclusive area had been surveyed by his direction, and the 340 acres set forth on the map as the Hutchinson claim. Furthermore, Ford frankly admits that in 1887 he received from Alfred Beckley the Grang-

er deed to Hutchinson for the 340 acres; that he did not deliver this deed to Hutchinson, but still has it among his papers. The record is void of proof of any particular reason for the non-delivery except by inference from figures endorsed thereon by some one indicating lack of payment of the actual consideration therefor. It is not shown Ford was authorized to withhold that deed or to deliver it to the vendee. But it is important and conclusive as an element of notice on his part of the Hutchinson claim. Notice likewise effectual must be imputed to the James brothers and the plaintiff, who derived title from Ford. When they took their deeds in 1894, the quit claim deed to Ford and the two conveyances to Bond Brothers were on record. And James A. Hutchinson and some of the defendants claiming under him then were and for many years had been in actual and continuous possession of the land as residents thereon, clearing and cultivating parcels of it and making valuable improvements upon such parts.

But, as plaintiff contends, have not defendants, by their own evidence, eliminated the Beckley contract as a matter of defense in this action? They introduced on their behalf the deposition of J. W. McCreery given for the James brothers in the prior tax proceeding of the State against Jarrell and others, wherein the deponent testified that the signature of Alfred Beckley to the contract was not genuine but a forgery. The testimony was positive and unequivocal. That was the only portion of the deposition offered and admitted. In argument, defendants say they were entitled to introduce this evidence to show plaintiff's change of position as to the basis or source of its title—to show that, although the Beckley contract was in the Jarrell suit attacked as a forgery, yet it was relied on in this action to support plaintiff's right to a recovery. But plaintiff was not a party or litigant in the Jarrell suit. It did not intervene therein as a petitioner. The intervenors were the former owners of its title. It can not in this action be bound by the evidence they introduced in that proceeding. So far as is shown, plaintiff has never asserted the invalidity or lack of genuineness of the contract. Nor did defendants express on the record, when introducing

the deposition, the reason therefor now stated in argument. The ruling admitting it was not based on that ground. There is nothing in the record to show a qualified purpose in offering the deposition as proof, or that its probative value was limited to any particular use or object. It was admitted without restriction or qualification. Are not defendants bound by this evidence, and is it not conclusive against them upon this phase of their defense? It was not introduced to impeach or contradict any witness for either party; nor is it contradicted by any witness. It is the sole evidence in the record upon the matter to which it relates. As defendants now occupy the position of plaintiffs in error, must we not assume as true any evidence on their behalf not in conflict with any other testimony in the case, certainly when consistent with the verdict and judgment of which they complain?

A party is bound by his own evidence, and, when not contradicted, he can not be heard to say it is untrue. *Murphy* v. *Painter,* 125 Pac. 292; *Ensign* v. *Hart,* 10 Kan. App. 32; *Haas* v. *Zimmerman,* 79 N. Y. S. 459; *Rawls* v. *White,* 127 N. C. 17; *Stearns* v. *Railway Co.,* 148 N. W. 128; *Darr* v. *Darrow,* 120 Ia. 29. If not taken by surprise or confronted by a hostile witness, he vouches for the credibility of the testimony adduced on his behalf. He can not thereafter be permitted to assert or assume in argument that the witness is dishonest or unworthy of belief. 5 Jones on Ev. §§853, 854; 5 Chamberlayne on Ev. §3743. Nor, save under exceptional circumstances, may he on the trial impeach his own witness by proof either of lack of veracity or prior inconsistent statements; and this rule applies as well where he calls a witness of the adverse party for the purpose of proving any material fact. *Stout* v. *Sands,* 56 W. Va. 663; *Lambert* v. *Armentrout,* 65 W. Va. 375; 5 Jones on Ev. §§853-55; 5 Chamberlayne on Ev. §3743; 2 Wigmore on Ev. §896.

The principles established by the authorities cited have been extended to depositions; and it has been held that where a deposition taken by the adverse party is admitted it is to be taken as the evidence of the party offering it, and he is bound by its contents, unless contradicted by other testimony. *Von Tobel* v. *Stetson,* 32 Wash. 683; *Telegraph Co.*

v. *Center,* 25 Ala. 498; *Crowder* v. *Nelson,* 32 Miss. 260.   In the latter case the principle stated was embodied in an instruction to the jury.   ''No wrong will be done such party if the testimony so given be accepted as true.   His testimony, like his admission, is good against him''.   *Durham* v. *Coal & Mining Co.,* 22 Kan. 232.   A like principle was applied where defendant introduced letters written by plaintiff's officers.   He was denied the right to impeach them.   *Syndicate* v. *Cutler,* 143 N. W. 1095; *Engel* v. *Samuels,* 9 Col. App. 338.

Here is involved no question of the deception or hostility of a witness, or of any surprise occasioned to defendants in connection with the admission of the deposition of McCreery. Its admission was their deliberate act, with full knowledge of its contents.   Nor was the paper introduced as the foundation for further evidence.   Defendants' object in offering it can only be surmised, in view of the character and course of their defense upon this and the former trial.   It did not appear before the jury until the conclusion of their testimony in the second instance.   The inference may be indulged that, defendants deeming their notice merely a matter of due precaution in connection with other somewhat conflicting defenses, and conceiving the Beckley contract to be vital to plaintiff's right of recovery, their real purpose was to defeat that right by means of the McCreery deposition, showing the incurable weakness of an essential link in its chain of title, yet willing to receive any benefit that might enure to them should the jury find the contract valid and effective.

There is another point to be considered in the disposition of this contract, still conceding it to be genuine.   Subject to well defined limitations, the rule is general that all agreements for the purchase of real estate, whether oral or written, are merged and extinguished by a subsequent conveyance of the same land between the contracting parties.   In that event, the agreement loses its vitality, and becomes a nullity; it has accomplished the purpose the parties intended at its inception.

Ford, not the Grangers, with whom Hutchinson contracted through Beckley, made the deed for the 141 acres.   That Ford

had acquired and then still held the legal title to the 340 acres under the Granger quit claim deed, Hutchinson doubtless was aware. He could have refused to accept a deed from that source, but he did not elect to insist upon that right. His acceptance of the deed for part of the tract clearly evinces acquiescence in that transaction, and is evidence of abandonment of his contract. No demand appears to have been made upon the Granger heirs for a deed in compliance with the contract. At least no proof discloses such a demand; indeed the record is void of any proof on that subject, or of any hesitation on the part of the grantee to accept from Ford the 141 acre deed. Hutchinson promptly delivered it for recordation, and caused the land conveyed to be entered for assessment in his name and the taxes levied thereon regularly to be paid while he retained the title. And the proof introduced by the defendants themselves unequivocally shows that the grantee did not thereafter exercise or assert any dominion or control over the residue of the 340 acres until 1903, and then only to execute deeds for certain portions to his sons and the vendee of his son-in-law. He then was physically weak and mentally inept, due in a large measure to years of decline.

In a deed, when accepted, is merged all prior negotiations with respect thereof, including the written contract of sale, and the conveyance must be looked to in order to determine the rights and equities of the parties, if free from fraud and mistake. *Stephen* v. *Railroad Co.,* 116 Va. 211. The deed— not the contract—controls the rights of the parties, except under certain conditions that do not obtain here. When delivered and accepted, it is deemed, in the absence of fraud and mistake, to express the final and entire contract between the parties; and any inconsistencies between the original contract of sale and the subsequent deed, executed presumably in conformity with it, are in general to be explained by the latter. *Jones* v. *Wood,* 16 Pa. 25. Rawle, discussing the same principle, says: ''Being thus consummated, any inconsistencies between the terms of the contract and the terms of the deed are, in general, to be governed solely by the latter, into which the former are merged''. Covenants of Title (4th

Ed.) 566. *Howes* v. *Barker,* 3 Johns. 506, applies it to a case of diversity between the price stated in the contract of sale and in the deed made to consummate it. There the contract required a complete and unencumbered title, and the deed accepted conveyed an imperfect or encumbered title, the vendee then being aware of the defect. *Shontz* v. *Brown,* 27 Pa. 123; *Cronister* v. *Cronister,* 1 Watts & S. 442; *Fritz* v. *McGill,* 31 Minn. 536. So where a long term lease was made upon conditions therein expressed, a deed of conveyance of the same land between the same parties upon a valuable consideration within the term, reciting the lease but omitting the conditions, was adjudged to merge the lease, and "the grantees held the property freed from the conditions. *Church* v. *Church,* 23 S. C. 297.

In accord with these legal propositions, the vendee's acceptance of a conveyance from his grantor, or from a third person in lieu thereof, operates as a complete execution of an antecedent agreement to convey, and annuls it, and will defeat an action by the vendee based upon a deficiency in acreage of the area conveyed. *Carter* v. *Beck,* 40 Ala. 399; *Land Co.* v. *Railway Co.,* 79 S. E. 138; *Slocum* v. *Bracy,* 55 Minn. 249. "The presumption of law is that the acceptance of a deed in pursuance of articles of agreement is satisfaction of all previous covenants; and, although there may be cases in which such acceptance is but a part execution of the contract, yet to rebut the legal presumption the intention to the contrary must be clear and manifest." *Seitzinger* v. *Weaver,* 1 Rawle 377. In the opinion in the case last cited it is said: "Down to the period of its consummation, an executory contract is subject to modification; and, where an act is done which, without fraud or mistake, is tendered on the one side and accepted as full performance on the other, it is not competent to the party who accepted to allege that some part of the original contract remains to be performed". We applied the same doctrine in *Marsh* v. *Despard,* 56 W. Va. 132, and held "a contract may be discharged by the parties thereto, or the beneficiaries therein, by an entirely new contract entered into by them with reference to the same subject matter, the terms of which are coextensive with but repugnant to the

original contract''. Marsh purchased of Despard 82 acres
of land, and entered and retained possession until after the
death of Despard. To a son was allotted by partition a tract
supposed to contain the 82 acres, and, on the assumption
that the son acquired title thereto, Marsh entered into a
contract with him as a tenant and re-executed it for a sec-
ond term. And in *Straley* v. *Perdue,* 33 W. Va. 375, the
principle was announced that ''the acceptance of a deed for
a less quantity of land than that to which the grantee is en-
titled by his written agreement, with full knowledge of the
facts, accompanied with a surrender of the written agree-
ment, constitutes a rescission of said agreement to the extent
of the number of acres omitted from the deed''. See also
*Williams* v. *Coal Co.,* 60 W. Va. 239; *Dorr* v. *Midelburg,* 65
W. Va. 778.

If when tendered a deed does not conform with the terms
of an antecedent contract of purchase, on the vendee devolves
the duty to raise and urge whatever objections he may have
either as to form or substance; and his acceptance of the
conveyance, with knowledge of the defects in the instrument
or deficiency in quantity of the land contracted for, operates
as a waiver of the defects and deficiency. 1 Warvelle on
Vendors 409. These principles apply particularly when the
vendee enters into and retains possession of the lands sold.
*Kenniston* v. *Blakie,* 121 Mass. 552; *Moak* v. *Bryant,* 51 Miss.
560. Even if a failure to object to the form or subject matter
of a deed be not conclusive on the question of waiver, it is a
significant circumstance strongly tending to indicate waiver,
and, when taken in connection with other facts, may have an
important bearing upon the question when presented. 1
Warvelle on Vendors 411; *Dresel* v. *Jordan,* 104 Mass. 407;
*Gault* v. *Van Zile,* 37 Mich. 22; *Morgan* v. *Stearns,* 40 Cal.
434. In *Parkhurst* v. *Cortlandt,* 1 Johns. Ch. 273, Chancellor
Kent, discussing the rule of evidence as to parol agreements
contemporaneous with the execution of a written instrument
referable to the same subject matter, said: ''But I appre-
hend the rule to be too reasonable, and too well settled, now
to be disturbed, that when an agreement is reduced to writ-
ing all previous negotiations are resolved into the writing as

being the best evidence of the certainty of the agreement. Everything before resting in parol, becomes thereby extinguished or discharged''.

Nothing in the record enables us to ascertain what occurred upon the delivery and acceptance of the 141 acre deed. The demise of the grantee disqualified Ford as a witness to explain that transaction, although on the first trial he was permitted, improperly, to testify that the deed was executed in consummation of a compromise of all claims asserted under the Beckley contract. But what James A. Hutchinson did and failed to do is disclosed fully and conclusively. He possessed more than an ordinary degree of intelligence and business acumen; was for years private and official surveyor of lands; surveyed the tract described in the Beckley contract; resided on it prior and subsequent to the date that paper purports to bear, and until his death, which occurred thirty years later. After the deed his possession was confined to the 141 acres. That he was aware of his rights and equities, and knew when accepting the Ford deed that it embraced less than one half of the 340 acres, must be assumed, in view of the facts detailed and proved. Moreover, nothing tends to show complaint by him as regards the failure to embrace the whole of that tract, or as to any fraud or mistake in relation to the acreage conveyed. As stated, he caused the deed to be recorded, and the 141 acre tract, and that only, assessed with taxes, and the taxes paid, without remonstrance or dissent. The facts, uncontradicted as they are, clearly evince James A. Hutchinson's knowledge of the reduced acreage conveyed, and his acquiescence in the reduction. Wherefore, necessarily follows the conclusion that, as he did not thereafter manifest any dissatisfaction with reference to the excluded area, no party to this action can complain of the omission, or depend upon the Beckley contract to support or defeat recovery.

The second defense asserted—one in part inconsistent with the claim of equitable title by virtue of the Beckley contract —is adverse possession. The facts tending clearly to show actual occupancy of the 340 acre tract by defendants are not controverted. Their testimony on that issue stands uncontradicted and unimpeached. James A. Hutchinson, who died in

1903, then and from a time prior to the date of that contract continuously resided on the land, using and treating it for all purposes as absolute owner so far as within the bounds of the 141 acres. Between the years 1877 and 1883, under parol gifts thereof, he put his sons E. H. and L. H. Hutchinson and his son-in-law W. R. Hendricks in possession of portions of the land, containing 50 acres, 70 acres and 38 acres respectively. Subsequently the defendant L. H. Hutchinson acquired by purchase the interest of his brother, and Q. T. Brown that of Hendricks. •To these purchasers James A. Hutchinson executed deeds for the three tracts in 1903, and later Brown conveyed the 38 acres to the defendant J. Levi Cook. The donees, shortly after they were placed in possession, cleared, cultivated and fenced parts of the tracts allotted to them, erected dwellings thereon, and they and their vendees have since without interruption continued so to occupy and use the lands under claim of title by virtue of the parol gifts from James A. Hutchinson.

But this possession was not adverse to the Granger heirs while they held the legal title prior to 1888. So far as appears, James A. Hutchinson had or asserted no claim or color of title save the Beckley contract. Conceding but not determining the validity of that paper, he was their vendee, an incomplete purchaser, under an executory contract of sale. His holding was not hostile. He held in subordination to them, in contemplation of a conveyance of the legal title, to which necessarily he looked for his protection under his purchase. *State* v. *Harman,* 57 W. Va. 447; *Pickens* v. *Stout,* 67 W. Va. 435; 2 C. J. 74, 87, 151; 2 Am. & Eng. Enc. Law & Prac. 457. No length of time would be sufficient for such occupancy and use to ripen silently into title by adverse possession. Before the statute of limitations will commence to run, there must be an interruption of the privity of title between the purchaser and his vendor by the assertion of an adverse right. "The possession of an incomplete purchaser becomes adverse only when there has been a severance of the relation of vendor and vendee by a distinct avowal on the part of the vendee that he is holding adversely and not in subordination to the title of the vendor, and notice of

such disclaimer is brought home to the vendor''. *Marbach* v. *Holmes,* 105 Va. 178; *Chapman* v. *Chapman,* 91 Va. 397. Until such disseverance, a privity exists which precludes the idea of a hostile or tortious possession. The possession of the purchaser is not adverse to his vendor, although he has paid all the purchase money and used and occupied the land for his exclusive benefit; nevertheless his contract is a recognition of the outstanding legal title in his vendor, and his holding will be regarded as in subordination thereto. *Core* v. *Faupel,* 24 W. Va. 239; *Bank* v. *Neal,* 28 W. Va. 749; *Chapman* v. *Chapman, supra; Pickens* v. *Stout, supra.* Nor was the possession of the defendants and their predecessors in interest hostile to the Granger title. Their claims were subservient to it. As to the tracts occupied by them, they stood in the shoes of James A. Hutchinson. Their claims were based upon the title bond. They held under him, and hence they occupy the same position in reference to his vendor. Their possession partook of the same friendly character as his. 2 C. J. 75, 155; 2 Am. & Eng. Enc. Law & Prac. 461.

Apparently conceding the soundness of the principles established by the authorities cited, defendants, notwithstanding the great volume of testimony they had introduced on the subject, at the conclusion of the trial procured, over plaintiff's objection, an instruction directing the jury not to consider any of their ''evidence as to adverse possession of the lands in dispute before the date of the deed from Azel Ford and wife to the Jameses on the 12th day of December, 1894, for the reason that the defendants are not claiming the said land adversely until the date of said deed''. The request for this instruction would indicate a material alteration in their position, due probably to a more mature consideration of the law applicable to the defense set up by them in the trial. Were the propriety of this instruction necessary for decision upon the merits, it might be deemed erroneous in so far as it impliedly told the jury that the possession by defendants was not adverse to Ford after he procured his deed from the Grangers in 1888 but was adverse to his grantees from 1894. Our decisions say a purchaser who has obtained a deed conveying the legal title holds thereunder adversely to the world,

including his vendor and those claiming under him. *Core* v. *Faupel, supra; Bank* v. *Neal, supra; Ketchum* v. *Spurlock,* 34 W. Va. 597; *Bennett* v. *Pierce,* 45 W. Va. 654; *Pickens* v. *Stout, supra.* Authorities state the general rule to be that one entering under an executory contract of purchase holds adversely against all persons except his vendor. 2 C. J. 155; 2 Am. & Eng. Enc. Law & Prac. 461; *Ketchum* v. *Spurlock, supra; Pickens* v. *Stout, supra.* This principle is based on the absence of privity of title with such other persons. Accordingly, it was held in *King* v. *Thompson,* 58 W. Va. 455, that after an owner has conveyed the legal title to another the possession of a vendee under a prior contract of purchase for the same land, while not adverse to the vendor, is hostile to his grantee from the date of the conveyance. In the opinion it was said: "At law, possession of the vendee is possession of his vendor, not adverse until after deed. It is not adverse in a court of equity. In its eye the vendor holds the legal title in trust for the vendee, and the vendee holds the equitable title in trust for his vendor to pay purchase money. The vendee recognizes the still subsisting right of the vendor; the vendor is trustee, the vendee beneficiary of the trust. Their relation is mutual and friendly, and forbids adverse possession. They claim under the same title, both at law and in equity. Therefore, while Rader held legal title, possession under the title bond was not adverse to him. But how after Rader conveyed legal title to King? The legal title was no longer in Rader in trust for White. There was no contractual relation between King and White or those claiming under him. King claimed for himself. His claim was adverse to everybody. He did not recognize White's right, but claimed solely for himself. He was White's enemy. Having legal title, he is held to claim only in his own right against White, even against Rader. Hence any possession under the title bond would be adverse to King from the date of his deed from Rader".

But defendants do not now complain of the instruction, so given at their request. They can not do so. Error invited or consented to is not ground for complaint upon appeal by the party who procured the ruling. *Comer* v. *Lumber Co.,*

59 W. Va. 688; *Gillespie* v. *Davis*, 116 Va. 630; *Railroad Co.* v. *Crocker*, 117 Va. 327.   While plaintiff objected to the giving of the instruction, it does not now urge its impropriety by cross-assignment.   Inasmuch as the charge was not prejudicial to plaintiff, we may properly apply the principle stated in *Wickham* v. *Leftwich*, 112 Va. 225.   There it was said: "It is unnecessary to pass on the propriety of an instruction given at the instance of the defendant where the verdict is for the plaintiff.   The defendant can not complain of an instruction given at his instance, and the plaintiff in such case is not aggrieved by it".

Obviously, by the exclusion of evidence of adverse possession prior to 1894, defendants sought to avoid the consequences of a forfeiture of any title they may have acquired by virtue of possession extending back beyond that date. They admit, and the evidence conclusively shows, they paid no taxes until the year 1904.   The land had never theretofore been entered for assessment in their names.   In the petition filed by him in the Jarrell suit, L. H. Hutchinson conceded forfeiture of the 70 acre tract, and asked leave to redeem the same therefrom; and, as a witness on the trial now under review, testified that he had not paid taxes on the 70 and 50 acre tracts before he obtained deeds therefor from his father in 1902 and 1903.   Moreover, to T. N. Read and J. Q. Hutchinson, by agreement of the parties, was confided the duty to ascertain and report whether the 340 acre tract was entered on the land books, and if so for what years.   Hutchinson thereafter testified that the lands claimed by Cook under the deed from Brown for the first time appeared charged to him in Raleigh county in 1904 and to Cook in 1905, and to L. H. Hutchinson the two tracts in 1904.   This statement Read corroborated.   In argument, the theory, which harmonizes with the instruction given, is disclosed in the contention that, as the occupancy of the land by defendants did not become adverse until Ford's conveyance to the Jameses in 1894, the title by adverse possession did not ripen or become complete until 1904, wherefore they had five years after the latter date in which to enter the lands for taxation, and hence no forfeiture in their names had ensued when this action was

instituted in 1906. In our view, it is immaterial, as far as the consequences to defendants are concerned, whether their possession became adverse in 1894 or in 1888. In either event, the adverse title became forfeited for non-entry long before the institution of this suit. For "where two or more persons claim the same land under adverse title or color. of title, if either desires to protect his title from forfeiture he must enter the land on the assessor's book in his name and pay the taxes thereon. The payment of taxes on such land by an adverse claimant will not protect other titles from forfeiture. Each claimant must enter the land and pay the taxes on it in his own name". *Simpson* v. *Edmiston,* 23 W. Va. 675; *State* v. *Harman,* 57 W. Va. 447; *Lewis* v. *Yates,* 62 W. Va. 575, 593.

But defendants contend that, conceding such forfeiture of their title, plaintiff may not, as a claimant under the second clause of §3, art. 13 of the constitution, take the benefit of that forfeiture, and may not recover in this action, because the Granger title, which it asserts, was forfeited for non-entry for five successive years after 1888. They offered oral testimony to show non-assessment of the Granger lands for the period mentioned. To meet this proof, plaintiff introduced in evidence parts of the record in the Jarrell suit. But the exhibits purporting to be filed with the bill therein to identify the several tracts alleged to be forfeited do not appear in the record before us. The state either charged forfeiture of the entire 340 acre tract or some part of it. While not *eo nomine* parties, the Jameses and L. H. Hutchinson became such by petition. The former claimed title to the entire 340 acres and denied the forfeiture averred; the latter conceded forfeiture as to the 70 acre parcel conveyed to him by his father, and prayed leave to redeem it. That controversy a decree entered June 21, 1905, adjudicated. It ascertained that the Jameses through Azel Ford acquired title to the entire tract, less the 141 acres reconveyed to James A. Hutchinson, and that since their acquisition of the title the Jameses and those through whom they derived title theretofore had regularly caused the entry of the entire tract on the land books and paid the taxes charged thereon, where-

fore that tract and no part thereof had been or then was forfeited for non-entry and non-payment of taxes levied against it. It was "therefore adjudged, ordered and decreed that the bill of the State of West Virginia against such lands be dismissed".

Obviously, to the extent L. H. Hutchinson asserted or could have asserted claim to any part of that tract, that decree as to him is conclusive. Neither he nor any other party to that suit could, in any manner, except by an appeal within the statutory period, procure a review of that controversy or any claim litigated or litigatable therein. It foreclosed their rights and equities; by it they and the state are estopped —the state to condemn for an antecedent forfeiture, Hutchinson to re-assert such forfeiture.

A suit brought under chapter 105, Code, is a judicial proceeding, and therein the court has jurisdiction to determine finally all matters affecting the title to the lands involved in such suit. *Starr* v. *Sampselle*, 56 W. Va. 442; *State* v. *Harman*, 57 W. Va. 447; *State* v. *Hicks*, 75 W. Va. 767.

Does that decree likewise preclude the rights and equities of Brown and Cook, who claim title to the 38 acre tract conveyed by James A. Hutchinson to Brown in 1903 and by him to Cook. The heirs of James A. Hutchinson were named defendants as unknown in the Jarrell suit. Brown and Cook were not his heirs. Neither intervened in that suit. Yet what has been said applies in part with equal force to them. The non-forfeiture adjudicated by the decree released the land from any antecedent forfeiture, it matters not in whose name it had happened, if indeed any had occurred. The state can not, nor can they by any process now available, re-open that inquiry. To them the statute accorded the privilege of intervening in that suit to obtain court action thereon. §6, ch. 105, Code. "Every final decree entered in any such suit shall bar the claim of every person to the real estate or any part of it who has failed to appear and present his claim thereto as is provided in the sixth section of this chapter". §20.

Our decisions hold a decree of forfeiture in a suit brought under chapter 105 to be prima facie conclusive as to all per-

sons, including strangers to the suit, and say it can not be attacked collaterally. *Coal Co.* v. *Howell,* 36 W. Va. 489; *State* v. *Sponaugle,* 45 W. Va. 428; *State* v. *Jackson,* 56 W. Va. 558; *Feder* v. *Hager,* 69 W. Va. 60; *Land Co.* v. *Barrett,* 70 W. Va. 703. And in *Mills* v. *Henry Oil Co.,* 57 W. Va. 55, it is held that a decree of redemption under the same chapter "is conclusive to release all title vested in the state by such forfeiture". Moreover, the 38 acre tract claimed by Brown and Cook is in the same situation with reference to forfeiture as the 70 acre tract claimed by L. H. Hutchinson. The facts are essentially and necessarily the same with reference to both tracts. Judicial action, in nature final, as regards title, is *res judicata* and conclusive between the same parties and their privies, and concludes an investigation of the title to another tract adversely claimed by them in the same manner and under the same circumstances. *Custer* v. *Hall,* 71 W. Va. 120.

Brown and Cook can not now be entertained to say the decree in the Jarrell suit is as to them a nullity. Such a claim would operate to render inefficient and inadequate the proceedings authorized by law to permit the state to dispose of lands acquired through forfeiture. The court had jurisdiction to render the decree, and thereby to preclude the reinvestigation of the same matter of dispute between the parties and those whose duty it was to present and protect their claims, if any they had, in that litigation. Clearly, no forfeiture of the Granger title has occurred since it passed to the Jameses. The evidence is conclusive and not contradicted that the James brothers and the plaintiff have continuously had their lands assessed and paid all taxes levied thereon from the year 1894 until the trial of this action. Under the constitutional provision the forfeited adverse title was transferred to them.

For reasons stated, the judgment will be affirmed.

*Affirmed.*