# CHARLESTON.

HARMAN et als. v. DRY FORK COLLIERY CO.

Submitted September 25, 1917.　Decided October 2, 1917.

1. EVIDENCE—*Parol Evidence—Description of Deed.*
     Parol evidence is not admissible, in ejectment, to vary or contradict the description in a deed for land, when no repugnancy or latent ambiguity is shown to exist.　(p. 784)..

2. SAME—*Admissions—Declarations of Deceased Grantor—Admissibility.*
     When a certain corner of an adjoining tract is called for in a deed, as the beginning corner of the land thereby conveyed, proof of its actual location and identity determines the beginning point, and evidence of admissions and declarations by the deceased grantor that another point was intended is not admissible.　(p. 785).

3. DEEDS—*Merger of Contract of Sale—Effect.*
     A contract of sale is merged in a conveyance made in pursuance of it, and, if there is any conflict between the papers, the deed controls.　(p. 785).

Error to Circuit Court, McDowell County.

Action by W. F. Harman and others against the Dry Fork Colliery Company.　Judgment for defendant, and plaintiff W. F. Harman brings error.

*Reversed and remanded for new trial.*

*Greever, Gillespie & Divine, Chapman, Peery & Buchanan* and *S. M. B. Coulling,* for plaintiff in error.

*Strother, Taylor & Taylor, Litz & Harman* and *Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

To a judgment for defendant in this action of ejectment, plaintiffs were awarded a writ of error.　Both parties claim mediately from D. G. Sayers, as a common source of title.

D. G. Sayers and Henry Harrison were the joint owners of a tract of 50,000 acres of land.　In the year 1889, after the death of said Harrison, the land was partitioned between his heirs and the said D. G. Sayers.　Among other parts of it

assigned to Sayers was a tract of 3139 acres. The piece of land in dispute contains 51 acres, and lies within the bounds of that 3139 acre tract. Upon Sayers' death in 1902 it passed to his heirs, of whom there were nine. Two of them conveyed their interests to W. F. Harman, and two conveyed their interests in the 3139 acre tract to the Hall Mining Company, a corporation, one of the plaintiffs. W. F. Harman, the Hall Mining Company and the five remaining heirs of D. G. Sayers, who did not dispose of their interests in the inherited lands, constitute the plaintiffs. Said Sayers and Harrison, in 1879, and before partition was made of the lands, sold to one J. A. Mulkey about a hundred acres of land. Claiming to have acquired the equity of said Mulkey, Daniel Johnson and Albert Sheppard afterwards divided this piece of land between them. H. C. Auvil afterwards acquired Daniel Johnson's equity in his part, and Preston Beavers the equity of Albert Sheppard in his part of the land, and on the 25th of October, 1889, D. G. Sayers and wife executed deeds to them for their respective parts.

After said Auvil's death, his heirs conveyed the land to G. W. Lambert, and Lambert's title has passed to defendant, the Dry Fork Colliery Company, a corporation. It contends that the 51 acres in dispute is included in the bounds of the deed to H. C. Auvil. Whether it is or not is the matter in controversy. It is clearly proven to be within the bounds of the 3139 acre tract. The case is one of disputed boundary lines. Said Sayers and Harrison owned other lands lying east of and adjoining the 3139 acre tract, and plaintiffs contend that no part of the land sold to Mulkey, and conveyed to Preston Beavers and H. C. Auvil lies within the bounds of the 3139 acres. Defendant contends that 51 acres of the part conveyed to Auvil does lie within those bounds. The partition between D. G. Sayers and the heirs of Henry Harrison was made between the May and the July terms of McDowell circuit court, 1889. The deed to Auvil bears date the 25th of October of that year, and describes the land as being located "on the south side of the Dry Fork of Tug River, adjoining the lands of Preston Beavers the land of said Sayers & said Auvil, & being the lower part of the lands sold to J. A.

Mulkey by D. G. Sayers & Henry Harrison, August 4th, 1879, for which they executed their title bond which has since been assigned to H. C. Auvil.'' It then sets out the metes and bounds as follows:

''Beginning at a spotted oak corner to 100 acres known as the Harvey George tract thence a straight line up the hill to a low gap on top of the ridge that divides Dry fork and the left hand fork of lick branch thence running up said ridge with the top thereof to the head of the Lynn hollow, thence down a spur between said hollow & Dry fork to the division line made by & between Daniel Johnson & Albert Sheppard former owners of said land and thence with said division line to a line of said 100 acres and with the same down the river to the beginning containing 100 acres more or less, with its appurtenances.''

The identity and true location of the lines and corners of the Harvey George 100 acre tract are not controverted. All the witnesses, who testify in the case respecting them, agree on their location. The southern boundary lines of the Harvey George tract are the northern boundary lines of the tract conveyed to H. C. Auvil. Said Auvil was then the owner of the George tract, and is shown to have written the deed which D. G. Sayers made to him on the 25th of October, 1889. The Harvey George patent bears date 31st of August, 1849, and describes the tract of land by metes and bounds. One corner called for on the southern boundary lines is a ''spanish oak and sugar in a hollow.'' That corner is identified by all the surveyors employed in the case and by other witnesses. The timber has been cut off the land, but a spanish oak stump, about thirty-six inches in diameter, and a sugar stump almost rotten, were found and the running of the lines of the George tract, by some of the surveyors, proves the location to be correct. No witness denies the correctness of the location. It is also proven, and not denied, that it is the only corner called for on the southern boundary of the George tract at which any kind of an oak tree is called for in the patent.

Plaintiffs insist that the identification of that corner proves conclusively the true location of the beginning corner of the

tract conveyed by D. G. Sayers to H. C. Auvil. The Auvil deed calls for "beginning at a spotted oak corner to 100 acres known as the Harvey George tract." The surveyor who ran the lines when the D. G. Sayers and Henry Harrison lands were partitioned, described the same corner as being on a "water oak and sugar," and a number of witnesses testify that the same specie of oak is locally known as spanish oak, spotted oak or water oak. The fact that various surveyors, who surveyed the lands at different times, employed those terms to describe the same tree, proves that, locally at least, they are but different designations for the same kind of an oak. It is shown to be the only corner on the George tract that, in any manner, fits the description of the corner of that tract, called for as the Auvil beginning corner.

A great deal of testimony was admitted at the instance of defendant and over the objection of plaintiffs, tending to prove that the beginning corner of the Auvil tract was at a poplar, located some distance west of the oak, and not a corner of the George tract, nor even in a line of it, but on the opposite side of Dry Fork from it. The George tract lies partly on both sides of the river, and the Auvil tract is described in the deed as being on the south side of the river, and the closing line or lines as running with the lines of the George tract down the river to the beginning. At the corner claimed by plaintiffs the George tract is on the south side of the river, but the lines running westward from that point cross to the north side some distance before the point is reached near which defendant claims the poplar stood, and it is located on the north side.

There is no evidence that the H. C. Auvil tract was actually surveyed at the time the conveyance was made to him. The bearings and distances of the boundary lines are not given, and no timber, except the spotted oak at the beginning corner, is called for as marking the boundary. Starting at either corner contended for as the beginning corner and going around the boundary, the other parts of the description in the deed may fit the ground equally well, according to either contention, except the closing lines claimed by defendant which depart from the George tract in order to get back to

the beginning corner claimed by it. The lines claimed by plaintiffs, except the first one, are identical with the lines claimed by defendant, but defendant insists that the boundary extends farther to the west and includes the 51 acres in dispute.

The Auvil deed calls for a spotted oak corner of the 100 acres Harvey George tract as the beginning, and no repugnancy appears to exist between the different parts of the description in the deed, and no latent ambiguity is shown. Therefore, how is it possible, in this case, to depart from the beginning corner described in the deed? If the parties were mutually mistaken in designating it, a court of law is powerless to correct it. Title to so much only of land passed as is embraced in the description given in the deed. If the corners and lines therein designated have been correctly located on the ground and identified they control, and parol testimony is not admissible to contradict or vary the terms of the deed. Witnesses will not be permitted to say that some point, other than the one described in the deed, was intended as the true corner. When no latent ambiguity exists the deed is not only the best evidence but the only evidence to prove what land was actually conveyed. *Lewis* v. *Yates,* 62 W. Va. 575; *Snooks* v. *Wingfield,* 52 W. Va. 441; *Pasley* v. *English,* 5 Grat. 155; and 3 Devlin on Deeds, sec. 1030.

*Hill* v. *Proctor,* 10 W. Va. 59, was a suit for specific performance against the heirs of a deceased vendor of land. The description in the sale contract of one of the boundary lines was, "the first hollow below the improvement where Simon Oxier lived, crossing the creek at right angles" etc. There was another hollow, lower down the creek, formed by Cabbage Branch, and Proctor had the surveyor to run the line, not from the first hollow, but from the one formed by Cabbage Branch, which included more land. He then sought to prove by oral testimony that the vendor, some years after the contract was made, had stated that the line of the land he sold Proctor crossed the creek at the mouth of Cabbage Branch and ran up said branch. But that testimony was held not admissible, because it contradicted the written contract. Cabbage Branch was not the hollow referred to in the writing.

To permit the certain and definite description of boundaries expressed in a deed to be contradicted or varied by oral admissions and declarations, made by parties to the deed, would seriously impair the security of land titles which it is the policy of the law to protect by providing that land shall pass only by deed or will.

If two corners had been shown to exist, either of which might have fitted the description of the corner called for in the deed, then a latent ambiguity would have existed, and parol evidence would have been admissible to prove which one of the two was intended. *Summerfield* v. *White*, 54 W. Va. 311. But no such facts here exist. A poplar tree, not a corner of the George tract, can not possibly be substituted in the place of an oak tree corner called for in the deed and actually proven to exist and located on the ground by the uncontradicted testimony of witnesses. Hence, the testimony of witnesses to the effect that, some years before the deed was made to Auvil, D. G. Sayers pointed out, or stated, in their presence that a poplar tree at or near the corner claimed by defendant, and that certain lines were the boundaries of the land described in the Mulkey title bond, was clearly inadmissible because it contradicts the description given in the deed of the beginning corner. Parol evidence is admissible, of course, to locate monuments which are called for, after they have ceased to exist and their location is uncertain. In such case the evidence would not contradict, but would be consistent with the deed. But we know of no authority which holds that testimony may be received to prove that a different corner from the one described in the deed was the one intended, except in case of fraud or mutual mistake. If the corner called for is located and identified, it is the best and only evidence of the true corner. There is no conflict respecting the location and identity of the spotted, spanish or water oak, corner to the George tract, nor any evidence that there was more than one such corner in that tract. It therefore follows that it must be the beginning corner called for in the Auvil deed. The Mulkey title bond is not in evidence, but if it were and called for a different corner than the

one called for in the Auvil deed, it could not control the deed, because, whatever its description might have been, it became merged in the deed. "Where a corner called for is a known and ascertained point or one that can be ascertained and fixed upon the ground by proper examinations or surveys, the true location of such corner is the one referred to in the grant or conveyance." 5 Cyc. 871. *Smith* v. *Chapman*, 10 Grat. 445.

The court could very properly have instructed the jury that the oak corner to the Harvey George 100 acre tract was the beginning corner of the Auvil tract, because the deed so says. The only evidence, proper to be considered, presented a pure question of law, since there was no conflict respecting its location and identity. The beginning corner can be no other than an oak, corner to the George tract.

Plaintiffs requested fourteen instructions and defendant twelve. The court refused nine of plaintiffs' and four of defendant's, and gave all the others. It was error to refuse a number of plaintiffs' and likewise error to give a number of defendant's. But it is hardly necessary to point out in this opinion the particular errors, as many of the instructions would not have been at all appropriate and would not have been requested, but for the admission of testimony contradicting the Auvil deed.

Much testimony was taken respecting adversary possession. Defendant does not appear to have claimed under any paper writing which could be regarded as color of title defining the boundaries of the 51 acres outside of the H. C. Auvil deed, until in 1906, when the heirs of said Auvil conveyed the land to G. W. Lambert. That conveyance does include within its description the 51 acres, but it was made less than ten years before this suit was brought. Actual possession prior to that time seems to have been confined to a small portion of the 51 acres. The jury could not, therefore, have been justified, in any event, in finding a verdict for the defendant on the evidence before them.

The judgment will be reversed, the verdict set aside and the cause remanded for a new trial.

*Reversed and remanded for new trial.*