· SCOTT R. WOLFE *et al. v.* E. G. LANDERS

(No. 9172)

Submitted February 10, 1942. Decided April 7, 1942.

*Eary, Thompson & Vickers* and *W. L. Lee,* for appellant.
*Mahan, Bacon & White,* for appellees.

Fox, President:

On May 18, 1929, the Charlton Development Company entered into a written contract with E. G. Landers, by which it sold to him eight lots in the Falls View Addition to Boncar, West Virginia, numbered 15, 15B, 16, 16B, 17, 17B, 18 and 18B, in Block "D," as shown on the plat of said addition. This contract contained the following building restriction: "A building line of thirty-five feet is to be maintained from any avenue, boulevard or road on which the lot faces. No building can be constructed except a residence and at a cost of not less than $2500.00, unless it be a private garage. No outside buildings, pen or pens, shed or sheds can be built which would be unsightly or could be declared a nuisance." On November 5, 1930, the Development Company executed a deed to Landers for the property mentioned in said contract, but described the same as Lots Nos. 15, 16, 17 and 18 in Block D in said addition, it being explained by testimony that the division of said lots was ignored and the same property conveyed in four lots. This deed was recorded in the County Clerk's office of Fayette County, but the record fails to show the date of recordation. It contained a building restriction in the language following: "It is especially agreed and understood between the parties hereto that a building line of thirty-five feet from the street and/or avenue shall be maintained in the erection of buildings on said lots; that no building shall be erected on said lot other than for resident purposes and said building shall cost not less than $3500.00, with private garage; and that no outside buildings, pen or pens, shed or sheds, shall be built which would be unsightly, or that could be declared a nuisance." Subsequent to the date of this deed, and on April 2, 1932, R. S. Long, D. C. Smallridge and H. H. Smallridge, successors in title to Charlton Development Company, conveyed to the plaintiffs, Scott R. Wolfe and Mayme Wolfe, his wife, Lot No. 19A in Block D, described as located in Charlton Heights, and a deed of correction was executed on May 8, 1934, in which the wives of the grantors joined, conveying to said grantees the same property. In each

of these deeds the building restriction quoted in the Landers deed was embodied and made a part thereof. The other plaintiffs hold deeds to lots in the same subdivision, which contain the identical building restrictions as those in the Landers and Wolfe deeds, and title thereto passed from the Charlton Development Company, or its successors in title, subsequent to the date of the Landers deed. The lots owned by the plaintiffs and the defendants are all located in the same subdivision, whether designated as Charlton Heights or Falls View Addition to the Town of Boncar.

The plaintiffs, or their predecessors in title, each erected residences on the lots purchased by them, costing at least the sum of $3,500.00, and in that way complied with the building restriction contained in their deeds. About February, 1938, Landers began the erection of a residence building on Lot No. 18, conveyed to him as aforesaid. The construction of the building proceeded well along toward completion, when this suit was instituted for the purpose of restraining the erection of the said building, it being alleged that the same was being erected in violation of the building restriction aforesaid.

On March 30, 1938, the Circuit Court of Fayette County awarded a temporary injunction as prayed for, the effect of which was to inhibit and restrain Landers from constructing, completing, using or maintaining on his said real estate, in said addition, any building or residence, with private garage, at a cost of less than $3,500.00. The defendant appeared and answered the bill, evidence was taken in open court, and the case prosecuted to a final hearing, resulting in a decree entered on the 2nd day of May, 1940, by which the temporary injunction of March 30, 1938, was perpetuated and made permanent, with this provision contained therein: "Provided, however, that nothing herein contained shall inhibit, enjoin or restrain the said E. G. Landers from constructing the above-mentioned building by making reasonable adjustments and additions thereto so that the same when completed, and with a private garage thereto, shall cost not less than

$3500.00 so as to comply with the provisions in the deed from Charlton Development Company, a corporation, to E. G. Landers, dated Novemer 5, 1930, * * *." From this decree Landers appeals.

It will be noted that there is a variance between the building restrictions contained in the Landers contract and the deed executed thereunder. In the contract the restriction applies to a building costing not less than $2,500.00, whereas in the deed $3,500.00 is the figure used. If this were a case between the Charlton Development Company and its grantee, a showing that the restriction inserted in the deed was placed there by mutual mistake or through fraud might justify a reformation of the deed. But that is not asked for, and probably could not be granted to the prejudice of subsequent purchasers of lots in the same subdivision, and who made purchases in reliance on the covenant appearing in the deed as executed and recorded. It seems clear that an executory contract for the sale of land is merged into the deed executed to carry out the agreement, and in case of a restrictive covenant in a deed which varies from that contained in the contract, the deed controls. *James & Sons* v. *Hutchinson,* 79 W. Va. 389, 90 S. E. 1047; *Harman* v. *Colliery Co.,* 80 W. Va. 780, 94 S. E. 355; *Watson-Loy Coal Co.* v. *Mining Co.,* 85 W. Va. 645, 102 S. E. 485; *Putney Shoe Co.* v. *R. F. & P. Ry. Co.,* 116 Va. 211, 81 S. E. 93.

A restrictive covenant in deeds for lots in a subdivision, not contrary to public policy, may be enforced by injunction, and such covenant will be held to be for the benefit of grantees of lots located therein. *Robinson* v. *Edgell,* 57 W. Va. 157, 49 S. E. 1027; *Withers* v. *Ward,* 86 W. Va. 558, 104 S. E. 86; *Cole* v. *Seamonds,* 87 W. Va. 19, 104 S. E. 747; and *Kaminsky* v. *Barr,* 106 W. Va. 201, 145 S. E. 267. Whether such a covenant runs with the land, or the lot owner's right is based upon estoppel creating an equitable right, is relatively unimportant, and under either theory advantage thereof may be taken by owners of lots affected thereby at any time. A rule governing such restrictions is that, being in derogation of the rights of

ownership, they should be strictly construed. *Neekamp v. Huntington Chamber of Commerce,* 99 W. Va. 388, 129 S. E. 314. There is little dispute between counsel as to the law applicable to this case, and any decision we make must be based largely on the factual situation.

Defendant contends that the building erected by him at the time of the temporary injunction would cost, when completed, at least the sum of $3,500.00, including the cost of a garage. To sustain his position he relies, to a large degree, on a contract entered into between him and a building contractor, by which the contractor agreed to erect the said building, excluding the garage, at the price of $3,100.00. This contract is dated the 26th day of February, 1938, and provides for a building with dimensions of twenty-four by thirty-six feet; a twenty by twenty-foot basement; hot air furnace in the basement; hot and cold water system; a front porch eight by twelve, and a porch on the east side of the house to be eight by twenty-four feet, with an eight by ten-foot enclosed breakfast nook on the kitchen end. It also provides for a retaining wall at the rear of the building, and there are provisions as to the material to be used, plumbing, etc. Much evidence is introduced on the part of defendant to show that this contract is a fair one, and that full compliance therewith was reasonably worth the contract price. Other evidence is introduced to show that when the cost of the garage is added to the contract price the aggregate will at least reach $3,500.00, and come within the restrictive covenant involved. The plaintiffs introduced testimony tending to show that even if the building were constructed according to the specifications contained in the contract, it, including the garage, would cost less than $3,500.00, while defendant's counsel in briefs and oral argument contend that, properly analyzed, the evidence adduced by the plaintiffs fails to show that the building, when completed, with garage, will cost less than $3,500.00. Suffice it to say that the evidence is in marked conflict on this point, and the conflict is such as might reasonably be settled in favor of either the plaintiffs or the defendant. If we were de-

ciding the cause entirely upon this evidence, we would not feel justified in setting aside the decree of the trial court as plainly wrong, but would hold that it was a finding based upon substantial evidence, such as, under well-settled principles, we could not disturb.

Taking up the contract for the construction of this building so strongly relied on by the defendant, we are first met with the contention of the plaintiffs that the evidence with respect thereto is inadmissible because the contract was not pleaded in the defendant's answer. We do not think the defendant was called upon to plead this contract. It is a mere matter of evidence tending to support his contention that the building he was erecting, when completed, would come within the restrictive covenant. "It is not necessary in pleading to state mere matters of evidence. The due allegation of the fact, without detailing a variety of minute circumstances which constitute the evidence of it will suffice, and is, indeed, the better method of pleading." Hogg's Pleading and Forms, Fourth Ed. 110. However, the principal attack on the contract in question is based on the conduct of the defendant and contractor subsequent to the date thereof, and the question is raised as to whether, as a practical matter, either intended to erect the building provided for therein. The building was located on the side of a hill from which cliffs outcropped and on which the earth covering was thin. An excavation at the rear of the building was necessary to provide a foundation. Except for an opening in front, there was a solid foundation. The basement was not excavated before the foundation was laid, and had not been excavated at the time of the temporary injunction. It is suggested, but not established by evidence, that any excavation for the basement would have to be partially in solid rock, requiring explosives to remove the same, with probable damage to the structure overhead. The chimney erected at the end of the building did not provide an opening for a vent for the heating plant contracted to be located in the basement. The construction of the porch had not been begun, nor was there any open-

ing left for connecting the same to the building proper. The arrangement of the kitchen plumbing and drains was such that direct entrance could not be had from the kitchen to the breakfast nook which was to be erected at the end of the porch, and access thereto could only be had from the porch. The east end of the building was, it is contended, less than eight feet from the line of the adjoining lot, and it is clear that, in any event, the porch mentioned in the contract would extend to the line of the adjoining lot. No provision was made for outlets inside the building to provide for the use of the heating plant.

In answer to these observations and contentions, the defendant insists that his intention was and is to complete the building according to the terms of the written contract, and he explains his failure to excavate for the basement, prior to the erection of the building, to the fact that uncertainty existed as to location of the state highway then contemplated and about to be constructed, and that by reason thereof, any garage he would build would have to be located with respect to the road as finally completed and might affect the basement space.

These matters, with others, were considered by the trial court. We think he gave undue prominence to the fact that the construction contract mentioned in the evidence was not pleaded. We do not think the evidence justifies holding that such contract was executed subsequent to the temporary injunction. The question which concerns us is whether, treating the contract as having been entered into at the date fixed therein, it was, in fact, intended to be carried out. On this point we have this to say: It is inconceivable to us that either the defendant or the contractor, having in mind the interest of each, would have erected this building in the manner they did, had it been their intention fully to comply with the construction contract as it relates to the basement, the heating plant and the side porch. We find it difficult to believe that, being under contract to excavate and place a twenty by twenty-foot basement under this building, and considering the nature of the soil and the rock outcrop, the

contractor would have taken the risk of first erecting the building overhead, and excavating the basement afterwards, attended as it might have been with risks to the building itself, and certainly at increased cost. The placing of the heating plant in the building necessitated the use of the basement, and a connection from the heating plant to the chimney outlet, and the heating plant would have required outlets on the inside of the building. The erection of the side porch and breakfast nook was an integral part of the building and would not ordinarily be left to the last, necessarily involving extra work and expense. Considering the evidence as a whole, we are of the opinion that the defendant did not intend to erect a building which, with a garage, would cost $3,500.00, and that, in view of all the circumstances, the trial court was warranted in perpetuating the temporary injunction. In reaching this conclusion we give due weight to the finding of the trial court. While we have the power to overrule a trial court on a question of fact, and often do so, we exercise such power only in cases where we think the finding is plainly wrong as being without evidence to sustain it, or contrary to the plain preponderance of the evidence. We can not say that either of such grounds exists in this case.

The defendant, we think, was fully protected by the provisions of the decree quoted above, under which he has the right to make reasonable adjustments and additions to his building so that the same, when completed, will cost not less than $3,500.00. That provision, in our opinion, gives to the defendant everything to which he is entitled, and under it the expenditures he has made will not be lost, and, presumably, he will be compensated for the additional expense required in a better building, and one in keeping with the covenant contained in his deed.

The decree of the Circuit Court of Fayette County will be affirmed, and the case remanded to that court for such action as may properly be taken, should the defendant elect to erect a building within the terms of the decree appealed from.

*Affirmed.*