IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1132

_____

FILED

February 8, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

GLENN SPITZNOGLE, JR. And
MARLENE SPITZNOGLE,
Petitioners

v.

KEVIN R. DURBIN and
KRISTA A. DURBIN,
Respondents

_____

Appeal from the Circuit Court of Marshall County
Honorable David W. Hummel, Jr., Judge
Civil Action No. 09-C-209H

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 8, 2013
Filed: February 8, 2013

Frederick E. Gardner                                    Thomas E. White
Gardner Law Offices, PLLC                         White Law Office
Moundsville, West Virginia                         Moundsville, West Virginia
Attorney for the Petitioners                         Attorney for the Respondents

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1. "'"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

2. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3. "The presumption of law is that the acceptance of a deed, made in pursuance of an antecedent written agreement for the sale of land, is satisfaction of all previous covenants, and, although such acceptance may in some circumstances be but partial execution of the contract, to rebut the legal presumption the intention to the contrary must be clear and convincing." Syl. Pt. 7, *James Sons Co. v. Hutchinson*, 79 W. Va. 389, 90 S.E. 1047 (1916).

4. "Until consummated by deed, an executory contract of sale is subject to modification by agreement of the parties; and where an act is done which without fraud or mistake is tendered by one of them, and accepted as full performance by the other with knowledge of his legal rights and equities, the acceptor and those claiming under him are not competent to assert that some part of the original agreement remains to be performed." Syl. Pt. 8, *James Sons Co. v. Hutchinson*, 79 W. Va. 389, 90 S.E. 1047 (1916).

i

5.     "A party cannot avoid the legal consequences of his actions on the ground of mistake, even a mistake of fact, where such mistake is the result of negligence on the part of the complaining party." Syl. Pt. 4, *Webb v. Webb*, 171 W. Va. 614, 301 S.E.2d 570 (1983).

6.     "'Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.' Syl. Pt. 1, *Kanawha Banking and Trust Company v. Gilbert*, 131 W. Va. 88, 46 S.E.2d 225 (1947)." Syl. Pt. 4, *Sedlock v. Moyle*, 222 W. Va. 547, 668 S.E.2d 176 (2008).

Per Curiam:

On October 7, 2009, petitioners Glenn and Marlene Spitznogle filed suit in the Circuit Court of Marshall County, seeking to enforce the provisions of a written land contract that was complete and consummated. On May 20, 2011, the court granted summary judgment to the sellers of the property, respondents Kevin and Krista Durbin, holding that the contract had been merged into a deed that the Durbins tendered, and the Spitznogles recorded, while the lawsuit was pending. The deed excepted and reserved the mineral rights that were the subject of the parties' dispute. The Spitznogles filed a timely appeal from the court's order.

Upon careful review of the parties' briefs and the appendix record, we reverse the judgment of the circuit court and remand the case with directions that the court enter summary judgment for the petitioners.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

On September 1, 1999, the parties hereto executed a land contract whereby the respondents, Kevin R. Durbin and Krista A. Durbin, agreed to sell a piece of property to the petitioners, Glenn Spitznogle, Jr. and Marlene Anderson [now Marlene Spitznogle], for the agreed-upon purchase price of $60,000.00. The property was described as follow:

> The Dry Ridge Farm owned by the Durbin's [sic], located on
> Dry Ridge Road in Marshall County in the state of West

3

Virginia. The mailing address is R.D.#4 Cameron, WV 26033. Originally a 138 acre plot of land, with the exception of house trailer and lot around trailer already agreed upon by both parties that this is not included in this purchase.

The contract required the Spitznogles to make a payment of $875.00 every month for ten years, of which $500.00 was credited toward the purchase price of the property and the remaining $375.00 was for the monthly rent. The contract provided that "[a]t any time that Marlene and Glenn should miss 2 (two) consecutive payments the Durbin's [sic] have the right to void this contract with all previous payments being considered as rental payments."

At the time the land contract was executed, the Durbins held a fee simple interest in the Dry Ridge Farm property, subject to a reservation of oil and gas rights for the respective lifetimes of prior owners Johnson Scherich and Lorena Scherich.[1] The Durbins included no language in the contract excepting their vested remainder interest in the oil and gas rights, although they did, as noted, include language excepting a house trailer and lot. Additionally, they specifically referenced an existing right-of-way contained in a "court ordered agreement."

---

[1]On May 1, 1969, Mr. and Mrs. Scherich had conveyed the property to Roger and Janice Holmes, who in turn conveyed it to the Durbins on June 1, 1993. Both the Scherich-Holmes deed and the Holmes-Durbin deed recited the existence of the Scherichs' life estates. Mr. Scherich died on April 26, 2000 and Mrs. Scherich died on November 19, 2001.

4

On or about September 9, 2009, the Spitznogles made their final payment[2] and received a receipt from respondent Krista Durbin stating that "Marlene and Glenn have paid in full $60,000.00 for surface 138 acres on dry ridge." Thereafter, the Durbins failed and refused to tender a deed to the Spitznogles, notwithstanding that the land contract had been fully consummated. On October 7, 2009, the Spitznogles filed suit in the Circuit Court of Marshall County, West Virginia, seeking delivery of a general warranty deed for the property including all mineral, coal, oil and gas rights. The Durbins filed an answer, denying that the Spitznogles were entitled to any mineral interests in the property.

Two months later, while the lawsuit was pending, the Durbins tendered a deed to the Spitznogles, which was recorded on February 17, 2010. The deed contained the following language relevant to this dispute:

> There is excepted and reserved, by the parties of the first part, their heirs and assigns, all minerals and gas, underlying said property, including, but not limited to, all stratas from bedrock down, coal bed methane, royalties, and any other benefits whatsoever related to any and all minerals, together with any benefit arising by virtue of any existing oil and gas lease upon the property, by former owners.

The record is silent as to whether there were any oral or written communications between the

---

[2]The Durbins' pleadings in the underlying case seem to acknowledge that the Spitznogles' payment on August 1, 2009 should have been deemed their final payment, but that due to what they termed a "misunderstanding," the Durbins demanded one additional payment and the Spitznogles tendered it.

parties with respect to either the tender or acceptance of this deed, and it is not contended that acceptance of the deed effected an accord and satisfaction.

Thereafter, the Spitznogles moved for summary judgment, arguing that because the land contract did not contain any language indicating the Durbins' intention to except oil and gas rights, any questions of interpretation should be resolved in favor of the grantees. The Durbins filed a memorandum of law in opposition to this motion, arguing, *inter alia*, that when the deed was recorded on February 17, 2010, the land contract was merged in the deed and any cause of action based upon the contract was extinguished.

The trial court agreed with the Durbins. On May 20, 2011, the court entered an order denying the Spitznogles' motion for summary judgment and granting summary judgment in the Durbins' favor, ruling that as a matter of law, "[s]ince the deed contained provisions reserving the mineral rights to the defendants, the deed controls and the defendants are entitled to ownership of the mineral interests."[3]

---

[3]The Durbins did not file a motion for summary judgment; rather, the circuit court's judgment was entered on the Spitznogles' motion. In Syllabus Point 5 of *Employers' Liability Assurance Corp. v. Hartford Accident & Indemnity Co.*, 151 W. Va. 1062, 158 S.E.2d 212 (1967), we held that:

> Upon a hearing on a motion of one of the parties for summary judgment, after due notice, when it is found that there is no genuine issue as to any material fact and that the adverse party is entitled to judgment as a matter of law, the failure of such

(continued...)

6

## II.

## STANDARD OF REVIEW

" ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

## III.

## ARGUMENT

### A. The Circuit Court's Grant of Summary Judgment To the Durbins

The Spitznogles contend that the doctrine of merger should not be applied where litigation to enforce the provisions of the underlying contract is ongoing at the time a deed is tendered and accepted. Under the facts and circumstances of this case, we agree.

---

[3](...continued)
party to file a motion for summary judgment does not preclude the entry of such judgment in his favor.

7

We begin by examining the doctrine of merger. It has been established in our jurisprudence for almost one hundred years, although it is neither well known nor well understood. It was last mentioned by this Court more than seventy years ago, where we defined it in its most basic formulation: "Where an executory contract for the sale of land is followed by a conveyance thereof, the contract is merged in the deed of conveyance, and the deed will control." Syl. Pt. 1, *Wolfe v. Landers*, 124 W. Va. 290, 20 S.E.2d 124 (1942); *see also* Syl. Pt. 3, *Harman v. Dry Fork Colliery Co.*, 80 W. Va. 780, 94 S.E. 355 (1917) ("A contract of sale is merged in a conveyance made in pursuance of it, and, if there is any conflict between the papers, the deed controls.").

In practice, however, and indeed as evidenced by our analysis in both the *Wolfe* and *Harman* cases, the doctrine of merger seldom admits of hard-and-fast application. Not all antecedent agreements between grantor and grantee are extinguished upon acceptance of a deed, because merger is not an absolute rule but rather a rebuttable presumption.

> The presumption of law is that the acceptance of a deed, made in pursuance of an antecedent written agreement for the sale of land, is satisfaction of all previous covenants, and, although such acceptance may in some circumstances be but partial execution of the contract, to rebut the legal presumption the intention to the contrary must be clear and convincing.

> Until consummated by deed, an executory contract of sale is subject to modification by agreement of the parties; and where an act is done which without fraud or mistake is tendered by one of them, *and accepted as full performance by the other with knowledge of his legal rights and equities*, the acceptor and

8

those claiming under him are not competent to assert that some part of the original agreement remains to be performed.

Syl. Pts. 7 & 8, *James Sons Co. v. Hutchinson*, 79 W. Va. 389, 90 S.E. 1047 (1916) (emphasis supplied).

In rebutting the presumption of merger, a litigant must establish that the case falls within one or more recognized exceptions to the doctrine. These exceptions include fraud, mistake, ambiguity, lack of knowledge of one's legal rights and equities, and acceptance as only partial performance of an antecedent agreement. *James Sons Co.*, 79 W. Va. at 398-401, 90 S.E. at 1051-52; *Wolfe,* 124 W. Va. at 293, 20 S.E.2d at 125; *see also Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 532 (Ky.App. 2005) ("exceptions to the merger doctrine are fraud, mistake, or contractual agreement clearly not intended to be merged into the deed."); *Raymond* v. *Holliday*, 2011 WL 2462671 (Mich.App., 2011) ("where delivery of the deed represents only partial performance of the preceding contract, the unperformed portions are not merged into it[.]").

When the tender and acceptance of a deed is held to extinguish rights under an antecedent contract, it is most often in cases where the plaintiff/grantee was not a party to the underlying contract whose terms are urged as the basis for reformation. That was the factual situation in *Harman, James Sons Co*. and *Wolfe*. In *Wolfe*, this Court explained that:

9

> [I]f this were a case between the Charlton Development Company and its grantee, a showing that the restriction inserted in the deed was placed there by mutual mistake or through fraud might justify a reformation of the deed. But that is not asked for, and probably could not be granted to the prejudice of subsequent purchasers of lots in the same subdivision, and who made purchases in reliance on the covenant appearing in the deed as executed and recorded.

124 W. Va. at 293, 20 S.E.2d at 125. Additionally, our precedents make it clear that the parties' knowledge and intent are important factual elements in determining whether a merger has occurred. *See James Sons Co.,* 79 W. Va. at 400-401, 90 S.E. at 1052 (where deed conveyed fewer acres than were specified in antecedent contract, doctrine of merger applied because undisputed facts showed that original grantee was fully aware that the deed conveyed only 141 acres and that he acquiesced in the reduction of acreage until his death thirty years later).

In its order granting summary judgment to the Durbins, the circuit court treated merger as a principle of law admitting of no exceptions, citing the general rule articulated in *Wolfe* and *Harman.* Under the facts and circumstances of the instant case, the circuit court erred. The antecedent land contract , the terms of which the Spitznogles sought to enforce, was their own contract with the Durbins, not a contract into which some predecessor in interest had entered. The Spitznogles had filed suit on the contract months before the Durbins tendered the deed, and there is no evidence in the record to show that the Durbins

10

tendered the deed, or that the Spitznogles accepted it, as resolution of the lawsuit.[4] To the contrary, it is clear from the record that the Spitznogles did not accept the deed as "full performance by the [Durbins] with knowledge of [their] legal rights and equities . . . ," Syl. Pt. 8, *James Sons Co.,* but rather accepted it as partial performance of the land contract, believing that they retained their right to pursue full relief in circuit court. Indeed, in light of the Durbins' failure to tender a deed to the property for almost five months after the purchase price was paid in full – and then only after the Spitznogles were forced to retain counsel and file suit – it would be manifestly unfair to conclude that by recording the deed, the Spitznogles unwittingly extinguished their right to full relief. Finally, the Durbins claimed, in their memorandum in opposition to the Spitznogles' motion for summary judgment, that the parties' lack of mutual understanding as to the conveyance of mineral interests "is undeniably apparent," an admission that fatally undermines their argument that summary judgment was appropriate on the issue of merger.

In light of the foregoing, we conclude that the circuit court erred in granting summary judgment to the Durbins, as the undisputed material facts of record demonstrate that the land

---

[4]The Durbins never claimed that the deed effected an accord and satisfaction, and never brought forth any evidence to show that the deed was tendered as an offer to settle or that the Spitznogles accepted it "intelligently, realizing the consequences of [their] act and with full knowledge of the relevant facts[.]" *McCormick v. Hamilton Bus. Syst., Inc.*, 175 W. Va. 222, 223 n. 1, 332 S.E.2d 234, 236 n. 1 (1985).

contract between the parties was not merged into the deed, and that the doctrine of merger does not extinguish the Spitznogles' right to seek enforcement of the contract.

## B.    The Circuit Court's Denial of Summary Judgment To the Spitznogles

Having determined that the circuit court erred in granting summary judgment to the Durbins, we now turn to the question of whether summary judgment should have been granted to the Spitznogles. Both in the proceedings below and on appeal, the Spitznogles contend that our longstanding rules governing the construction of language in a deed should also govern the construction of language in a land contract. Specifically, they rely on Syllabus Point 1 of *Freudenberger Oil Co. v. Gardner*, 79 W. Va. 46, 90 S.E. 815 (1916),[5] in which this Court held: "A deed conveying lands, unless an exception is made therein, conveys all the estate, right, title, and interest whatever, both at law and in equity, of the grantor in and to such lands." The Durbins respond that both *Freudenberger* and the statute construed therein, West Virginia Code § 36-1-11 (2011),[6] apply solely to conveyances and

---

[5]In Volume 90 of the South Eastern Reporter, the unofficial reporter for decisions of this Court, the style of the case is *Freudenberger Oil Co. v. Simmons*. As is apparent from the text of the opinion, although both Mr. Gardner and Mr. Simmons were defendants in the lower court proceedings, only Mr. Gardner appealed.

[6]West Virginia Code § 36-1-11 (2011) provides:
> When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass the fee simple, or the whole estate or interest, legal or equitable, which

(continued...)

12

devises, whereas a land contract is neither, being only an agreement to convey in the future.

We find it unnecessary to determine whether cases and statutes governing deeds should be imported into our body of law governing land contracts. The Spitznogles brought a case founded on a contract, and their claims may be resolved by reference to well established contract principles. That the document in question is an executory contract is of no moment, as there is no question that an action will lie to enforce an executory contract that is complete and consummated.[7] *Wells v. Michigan Mut. Life Ins. Co.*, 41 W. Va. 131, 23 S.E. 527 (1895).

We must first determine whether the land contract at issue in this case is ambiguous. It is not contended that the document contains any ambiguous words or phrases; rather, the Durbins argue that an ambiguity arises from the contract's silence with respect to the issue of oil and gas rights. Specifically, the Durbins claim that at the time they executed the contract, they did not understand that they owned a vested remainder interest in the oil and gas on the Dry Ridge Farm property; and that had they understood this, they would not have sold the property for $60,000.00. With these twin assertions, mistake and insufficiency of

---

[6](...continued)
> the testator or grantor had power to dispose of, in such real property, unless a contrary intention shall appear in the conveyance or will.

[7]It is undisputed in this case that the land contract was complete and consummated.

13

consideration, they seek to bring themselves within a longstanding principle articulated by this Court:

> Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

Syl. Pt. 4, *Sedlock v. Moyle*, 222 W. Va. 547, 668 S.E.2d 176 (2008); *accord*, Syl. Pt. 5, *Capitol Chrysler-Plymouth v. Megginson*, 207 W. Va. 325, 532 S.E.2d 43 (2000); Syl. Pt. 1, *Kanawha Banking and Trust Company v. Gilbert*, 131 W. Va. 88, 46 S.E.2d 225 (1947).


There are several problems with the Durbins' argument. First, in the affidavit which Kevin Durbin submitted in opposition to the Spitznogles' motion for summary judgment, he made no mention of any alleged confusion as to the Durbins' ownership of oil and gas rights. To the contrary, he averred that "I am familiar with the oil and gas industry having been employed in that field," and further that "I am particularly aware of the oil and gas interests on the land which is the subject of the land contract with the Spitznogles." Most tellingly, Mr. Durbin averred that "I have previously sold land and reserved the oil and gas interests thereon, except for a town lot that I sold." In short, there is not one scintilla of record evidence to support the Durbins' claim that they were confused and mistaken about their ownership of oil and gas interests in the property described in the land contract. In fact, the Durbins' evidence leads inexorably to the opposite conclusion, given Mr. Durbin's claim to

14

familiarity, knowledge and expertise in the oil and gas field generally and the conveyance of oil and gas rights specifically.

Second, the Durbins' alleged confusion about their oil and gas rights is not in any event a mutual mistake that would allow them to add to, vary, or explain the terms of an unambiguous land contract. *See McGinnis v. Cayton*, 173 W. Va. 102, 106, 312 S.E.2d 765, 770 (1984) ("[t]he appellants must prove both that the mistake was mutual and that it was material in order to make the contract void as a matter of law."). Nothing in the record indicates that in 1999 the parties ever discussed mineral rights, let alone mutually misunderstood them. Any claimed misunderstanding was solely that of the Durbins, who, as noted, filed an affidavit attesting to their familiarity, knowledge, and expertise in the area of oil and gas rights. In that regard, we have held that "[a] party cannot avoid the legal consequences of his actions on the ground of mistake, even a mistake of fact, where such mistake is the result of negligence on the part of the complaining party." Syllabus Point 4, *Webb v. Webb*, 171 W. Va. 614, 301 S.E.2d 570 (1983).

Finally, the Durbins' alleged confusion about their oil and gas rights was a mistake of law, not a mistake of fact.

> As a general rule, one who enters into a contract or performs some act while laboring under a mistake of material fact is entitled to have the transaction or the act set aside in a court of equity; however, an individual should not be permitted to avoid

15

obligations he undertook while laboring under a mistake of law.

*Webb,* 171 W. Va. at 618, 301 S.E.2d at 574, citing *Harner v. Price*, 17 W. Va. 523, 544

(1880). The Court in *Webb* went on to explain that:

> A mistake of law . . . consists of a mistaken opinion or inference
> arising from an imperfect or incorrect exercise of judgment upon
> the facts as they really are and occurs when a person, having full
> knowledge of the facts, is ignorant of or comes to an erroneous
> conclusion as to the legal effect of his acts.

*Webb,* 171 W. Va. at 618, 301 S.E.2d at 574-75.

In this case, the record is clear that the Durbins had full knowledge of the material

facts: that their deed from Roger and Janice Holmes conveyed a fee simple interest in the

property, including the oil and gas rights, subject to a reservation of two life estates in Mr.

and Mrs. Scherich. Their mistake, if any, was a mistake of law: not understanding that upon

the deaths of the Scherichs, their remainder interest in the oil and gas vested without the

necessity of any further action in probate or court proceedings. Under these circumstances,

where the Durbins claim expertise in the oil and gas industry generally and the conveyance

of oil and gas interests particularly, where they drafted a contract that failed to except their

oil and gas rights, and where their mistake, if any, was in failing to understand their legal

rights (the immediate vesting of their remainder interest upon the death of the Scherichs)

despite their professed expertise, we cannot say that their mistaken belief as to the law was

16

such that would justify rewriting the contract with the Spitznogles, who bargained in good faith for the contract and performed every covenant therein.

The same analysis applies to the Durbins' claim that the contract, although unambiguous, may be avoided on the ground of insufficiency of consideration. The only evidence put forth by the Durbins in support of this claim was a conclusory statement in Mr. Durbin's affidavit that he "would not ever consider the land contract price of $60,000 to be adequate to sell the oil and gas interests to the Spitznogles." The record discloses, however, that six years earlier the Durbins had purchased the property, including the vested remainder interest in the oil and gas, from Mr. and Mrs. Holmes, for $55,000.00. Additionally, the Spitznogles not only paid $60,000.00 for the property, but also paid $45,000.00 as rent during the ten years in which they were making monthly payments toward the purchase price. Thus, the Durbins realized $105,000.00 from their deal with the Spitznogles, and they presented no evidence from which it could be reasonably inferred that this consideration was so insufficient that it would justify a court in rewriting the land contract.

In light of our conclusion that the contract was unambiguous, and that the Durbins failed to establish any legally sufficient basis for adding to, varying, or explaining its terms, it follows that the Spitznogles were entitled to summary judgment. The Durbins contracted to sell, and the Spitznogles contracted to purchase, the Dry Ridge Farm property. The

17

contract specifically excepted a trailer and a lot around the trailer, and required the Spitznogles to honor an existing right of way. The contract excepted nothing else. Therefore, upon the Spitznogles' complete performance of their obligations, with final payment made on August 1, 2009, the Durbins were obligated to convey all of their remaining right, title and interest to the property, which included their vested oil and gas rights.

## IV.

## CONCLUSION

The judgment of the Circuit Court of Marshall County, West Virginia, is hereby reversed, and this case is remanded to the court below for entry of summary judgment in favor of the petitioners, directing the respondents to deliver to the petitioners a general warranty deed for the property which is the subject of this suit, including all mineral, coal, oil and gas rights.

Reversed and Remanded With Directions.